PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 11/14/96**

TENTH CIRCUIT

---

PETE BENAVIDEZ,

        Plaintiff - Appellant,

vs.

ALBUQUERQUE, CITY OF;
LAWRENCE RAEL, Chief
Administrative Officer, in his official
capacity,

        Defendants - Appellees;

ROBERT H. SMITH, JR.,

        Plaintiff - Appellant,

vs.

ALBUQUERQUE, CITY OF;
LAWRENCE RAEL, Chief
Administrative Officer, in his official
capacity,

        Defendants - Appellees.

No. 95-2117
No. 95-2118
(Consolidated)

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-94-280-JP)

---

Paul S. Livingston, Albuquerque, New Mexico, for Plaintiffs-Appellants.

Charles W. Kolberg, Assistant City Attorney, Albuquerque, New Mexico, for
Defendants-Appellees.

Before KELLY, BRISCOE and LUCERO, Circuit Judges.

KELLY, Circuit Judge.

Plaintiffs-Appellants Pete Benavidez and Robert H. Smith, Jr., appeal from the grant of summary judgment in favor of Defendants-Appellees, the City of Albuquerque and its chief administrative officer, on their civil rights claim under 42 U.S.C. § 1983. Plaintiffs were City of Albuquerque employees. They claim they were unreasonably subjected to urinalysis drug testing in violation of the Fourth Amendment, and that the City's pre- and post-termination procedures denied them due process in violation of the Fourteenth Amendment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

Background

Plaintiffs Smith and Benavidez worked as field service operators with the City of Albuquerque's Public Works Department. Mr. Smith was Mr. Benavidez's crewleader. On April 22, 1992, while on duty, they drove in a City vehicle to the home of one of Mr. Smith's friends, another City employee. Plaintiffs did not know that Albuquerque police were already at the house, executing a search warrant for drugs. Mr. Smith remained in the vehicle drinking a beer and sent Mr. Benavidez to the back door of the house allegedly to borrow money from Mr. Smith's friend. Sgt. L. Saiz, an undercover police officer, answered the door, and asked Mr. Benavidez if he wanted a "sixteenth." A

"sixteenth" is common street parlance for a sixteenth of an ounce of cocaine. The officer then offered him a baggie containing a white powder, which Mr. Benavidez refused. Mr. Benavidez later testified that he said sixteen would be fine, thinking he was borrowing $16.00. While Mr. Benavidez was at the house, another police officer approached the City vehicle and observed Mr. Smith with the beer. When asked, Mr. Smith admitted he had been drinking.

Both Plaintiffs were detained for several hours, but not arrested. After releasing them, Sgt. Saiz informed William Otto, a City Public Works official, that Plaintiffs were questioned during a drug raid, and that Mr. Benavidez admitted that he was there "to score coke." Sgt. Saiz also advised Mr. Otto that Mr. Smith had directed Mr. Benavidez to purchase the drugs. Mr. Otto and Sam Walker, another Public Works official, interviewed Plaintiffs around midnight. Mr. Walker smelled alcohol on Mr. Smith's breath, but Mr. Otto stated that he did not believe Plaintiffs appeared to be "impaired." Because of this lack of obvious impairment, an on-duty drug counselor advised Mr. Otto not to test them.

Approximately thirty-six hours later, on April 24, 1992, City Police Chief Stover received a memo about the incident. The memo specifically stated the following: while on duty, Mr. Smith and Mr. Benavidez had arrived in a City vehicle at the residence of a fellow City employee, which was the scene of a drug raid; Mr. Smith admitted that he had been drinking a beer in the vehicle; and Mr. Benavidez admitted going to the residence to

- 3 -

buy cocaine. Chief Stover contacted the City's Chief Administrative Officer, who contacted the City's Director of Risk Management, who decided that Plaintiffs should be tested. Mr. Smith tested positive for cocaine, while Mr. Benavidez's tests were negative.

The City notified Plaintiffs that they were entitled to a pre-termination hearing. The notice informed Plaintiffs of the alleged violations, that they could respond orally or in writing, that they could be represented by counsel, and that they could face disciplinary action, including termination. Both Plaintiffs attended the hearing, accompanied by a union representative. Plaintiffs were terminated as of May 12, 1992.

The City held full post-termination evidentiary hearings on July 14, 1992 for Mr. Smith and on July 15, 1992 for Mr. Benavidez. Plaintiffs, while not represented by counsel, were again accompanied by a union representative. After these hearings, the City Personnel Hearing Board affirmed Mr. Smith's termination, and modified Mr. Benavidez's termination to a 90-day suspension without pay followed by reinstatement. Plaintiffs had the right to appeal in state district court, but chose not to do so. Instead, Plaintiffs Smith and Benavidez filed suit under 42 U.S.C. § 1983, claiming that their Fourth Amendment rights were violated by an unreasonable search and that their Fourteenth Amendment Due Process rights were violated by the City's pre- and post-termination grievance procedures. Summary judgment was granted for the City on both claims.

Discussion

We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court. Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). The substantive law determines which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Rivendell Forest Prod. v. Georgia-Pacific Corp., 28 F.3d 1042, 1045 (10th Cir. 1994).


I.    Fourth Amendment Claims

It is well established that a urinalysis drug test required by a government employer for the purpose of detecting illegal drug use is a search subject to the Fourth Amendment, and therefore must be reasonable. National Treasury Employees Union v. Von Raab, 489 U.S. 656, 678-79 (1989); Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 617-18 (1989); Rutherford v. Albuquerque, 77 F.3d 1258, 1260 (10th Cir. 1996). It is equally well settled that in the government employment context, as opposed to the criminal law context, a warrant will not be required where the intrusion is based on either

- 5 -

reasonable suspicion or "special needs." Skinner, 489 U.S. at 619, 623-24; Saavedra v. City of Albuquerque, 73 F.3d 1525, 1531-32 (10th Cir. 1996). The Supreme Court has recognized that "'when special needs, beyond the normal need for law enforcement, make the warrant and probable cause requirement impracticable,'" it will be dispensed with. Skinner, 489 U.S. at 619 (quoting Griffin v. Wisconsin, 483 U.S. 868, 873 (1987)). This "special needs" exception permits drug testing of employees in safety-sensitive positions, pursuant to a random or uniform selection process, and does not require probable cause or even reasonable suspicion that an employee might be impaired. Von Raab, 489 U.S. at 679; Skinner, 489 U.S. at 633-34; Ford v. Dowd, 931 F.2d 1286, 1289 (8th Cir. 1991). In the absence of a "special needs" random or uniform selection process, drug testing of a government employee does not require a warrant, but must be based on individualized suspicion, *i.e.*, a reasonable suspicion that the employee was engaging in unlawful activity involving controlled substances. Saavedra, 73 F.3d at 1532, aff'g 917 F. Supp. 760, 762 (D.N.M. 1994); Jackson v. Gates, 975 F.2d 648, 652-53 (9th Cir. 1992), cert. denied, 509 U.S. 905 (1993); Dowd, 931 F.2d at 1289.

Since we are not dealing with a "special needs" random or uniform selection process, our inquiry is whether the City had reasonable suspicion to order the urinalysis drug tests of Smith and Benavidez. Reasonable suspicion depends both upon the content of information possessed and its degree of reliability. Alabama v. White, 496 U.S. 325, 330 (1990). Thus, the only material facts at issue concern what information the City

possessed at the time it ordered Plaintiffs tested, and whether that information was reliable. If the information possessed by the City when it ordered the tests would create a reasonable suspicion that Plaintiffs used, possessed, or were impaired by illegal drugs on the job, then the resulting drug tests did not violate their Fourth Amendment rights. Saavedra, 73 F.3d at 1532. There is no dispute as to what information the City officials had at the time they ordered the drug tests of Mr. Smith and Mr. Benavidez—they had the incriminating information contained in Sgt. Saiz's memo to the police chief. Although Plaintiffs deny that they admitted to attempting to buy drugs, in light of the other information contained in the memo, this factual dispute is immaterial because it will not affect the outcome of the case. Anderson, 477 U.S. at 248; Rivendell, 28 F.3d at 1045.

The parties disagree over the types of information that will support reasonable suspicion drug testing. Plaintiffs argue that such testing must be based only on direct observation and/or physical evidence that the employee's ability to perform his job was impaired because he was under the influence of a drug. We disagree. Direct observation or physical evidence of on-duty impairment, while important, is not the only information which will support such testing. Rather, information which would lead a reasonable person to suspect non-safety-sensitive employees, such as Mr. Smith and Mr. Benavidez, of on-the-job drug use, possession or impairment is sufficient under the Fourth Amendment. See National Treasury Employees Union v. Yeutter, 918 F.2d 968, 974 (D.C. Cir. 1990) (Constitution requires reasonable suspicion of on-duty drug use or drug-

impaired work performance); see also Gates, 975 F.2d at 653; Dowd, 931 F.2d at 1292-93. The mere fact that the drug counselor, a lower level employee, initially decided against testing due to the lack of obvious impairment did not prevent the City from later testing when it obtained more information.

Plaintiffs also attack the reliability of the City's information. They claim that Sgt. Saiz was not a reliable and independent source, and that his memo was suspicious, unauthorized, and written out of anger and frustration. No specific facts support this claim. Under the totality of circumstances, City officials had reasonable suspicion to order the drug tests of Plaintiffs Smith and Benavidez.

Plaintiffs contend that the City's own drug testing policy requires observation of actual on-duty impairment before reasonable suspicion drug testing can be ordered.[1] We need not decide whether Administrative Instruction No. 123 imposed upon the City a

---

[1] The City's Administrative Instruction No. 123 states:

Reasonable Suspicion Substance Abuse Testing
Reasonable suspicion that an employee is under the influence of alcohol or of substances which could impair job performance and/or safety means that the employee is affected by the use of drugs or alcohol in an objectively detectable manner. It is supported by objective evidence, based upon known specific, articulable and observable facts that would lead a reasonable person to believe that the employee is under the influence of alcohol or other substances. In assessing whether reasonable suspicion exists, the employee's ordinary individual characteristics will be taken into consideration . . .

Aplt. Opening Brief at 14-15.

higher standard than the Fourth Amendment, because a violation of a municipal administrative directive does not give rise to a § 1983 claim. Malek v. Haun, 26 F.3d 1013, 1016 (10th Cir. 1994).

## II. Fourteenth Amendment Due Process Claims

Plaintiffs contend that the City's termination proceedings violated their Fourteenth Amendment Due Process rights. Specifically, Plaintiffs claim that (1) they were required to proceed first and bear the burden of proof in their post-termination hearings; (2) the Hearing Officer failed to make adequate findings of fact and conclusions of law; (3) the hearings violated city ordinances in that they were conducted without rules of procedure, the findings and conclusions were not provided to Plaintiffs prior to the Personnel Board's decision, and the Hearing Officer was not qualified; (4) the meeting at which the Board made its decision was closed in violation of the State Open Meetings Act; and (5) the Hearing Officer and Personnel Board considered the positive drug test conclusive, thereby depriving Plaintiff Smith of a meaningful opportunity to challenge the test.

We reject all of Plaintiffs' due process claims, which are identical to those raised and decided in Saavedra, 73 F.3d at 1533, and Rutherford, 77 F.3d at 1264, and we elaborate on why placing the burden of proof on Mr. Smith and Mr. Benavidez in their post-termination administrative hearings did not violate the Fourteenth Amendment's Due Process Clause.

Plaintiffs point to no controlling authority to support their argument that the Fourteenth Amendment forbids public employers from placing the burden of proof on terminated employees. On the other hand, the district court and the City cite <u>Lavine v. Milne</u>, 424 U.S. 577 (1976), for the proposition that it is irrelevant whether the public employer or former employee bears the burden of proof at a post-termination hearing. The Supreme Court stated in <u>Lavine</u> that "[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment." 424 U.S. at 585. <u>Lavine</u> is distinguishable, however, in that it addresses who should bear the burden of proof prior to the conferral of a benefit, that is, at the time the individual applies for the property rights, <u>see</u> <u>id</u>. at 586, whereas the instant case involves deprivation of a benefit already conferred.

Other than the suggestion in <u>Lavine</u>, few courts have directly addressed this question. Some courts have held that placing the burden of showing lack of just cause upon the public employee is unconstitutional, <u>e.g.</u>, <u>Soles v. City of Raleigh Civil Service Comm'n</u>, 457 S.E.2d 746 (N.C. App. 1995); <u>Cole v. Litz</u>, 562 S.W.2d 795, 799 (Mo. App. 1978); <u>cf</u>. <u>University of Tex. Medical Sch. at Houston v. Than</u>, 874 S.W.2d 839, 851 n.10 (Tex. App. 1994) (violation of due process to place burden upon student accused of cheating to show he did not cheat). Other courts have reached the opposite conclusion, <u>e.g.</u> <u>Vanelli v. Reynolds Sch. Dist. No. 7</u>, 667 F.2d 773, 780 n.13 (9th Cir. 1982); <u>Chung v. Park</u>, 514 F.2d 382, 387 (3d Cir. 1975); <u>Sherris v. City of Portland</u>, 599 P.2d 1188,

1193 (Or. App. 1979). We conclude the question must be answered by applying the balancing test of Mathews v. Eldridge, 424 U.S. 319 (1976), which was "first conceived to address due process claims arising in the context of administrative law." Medina v. California, 505 U.S. 437, 444 (1992).

Mathews set out a three-part test to determine the type and amount of procedure required by the Due Process Clause in an administrative proceeding:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As to the first Mathews factor, the Supreme Court recognized the significant private interest in retaining employment and "the severity of depriving a person of the means of livelihood," explaining that "[w]hile a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 543 (1985). The strength of the private interest in retaining employment is the same in this case.

The second Mathews factor weighs the risk of an erroneous deprivation and the value of additional procedures. Loudermill recognized that dismissals for cause will

- 11 -

often involve factual disputes, and that even when the facts are clear, the appropriateness or necessity of the discharge may not be. 470 U.S. at 543. In addressing the specific question of what process is due a government employee faced with termination for cause, Loudermill applied Mathews to determine the appropriate pre-termination process, but it based its evaluation of the constitutionality of that process in large part on the presence of significant post-termination procedures. Id. at 546. Similarly, we must evaluate the constitutionality of post-termination process in light of the pre-termination procedures it follows.

When the pre-termination process offers little or no opportunity for the employee to present his side of the case, the procedures in the post-termination hearing become much more important. Such a post-termination hearing represents the only meaningful opportunity the employee has to challenge the employer's action, and requiring a dismissed employee to prove in this context that he was terminated without just cause may increase the risk of an erroneous deprivation. It is often difficult to prove a negative, and where the pre-termination process has been minimal, the employee's fate may depend entirely upon the post-termination hearing. Cf. Lavine, 424 U.S. at 585 (recognizing that "[w]here the burden of proof lies on a given issue is, of course, rarely without consequence and frequently may be dispositive"); Speiser v. Randall, 357 U.S. 513, 525 (1958) (acknowledging that "where the burden of proof lies may be decisive of the outcome"). In contrast, when the employee has had a meaningful opportunity to explain

his position and challenge his dismissal in pre-termination proceedings, the importance of the procedures in the post-termination hearing is not as great. In this type of post-termination hearing, simply giving the employee "some opportunity" to present his side of the case "will provide a meaningful hedge against erroneous action." See Loudermill, 470 U.S. at 543 n.8.

We must therefore assess the sufficiency of the pre-termination procedures provided to Mr. Smith and Mr. Benavidez to determine whether due process requires the City to carry the burden of proof in the post-termination hearings. It is an "essential principle of due process . . . that a deprivation of . . . property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case,'" Loudermill, 470 U.S. at 542 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)). The hearing "need not be elaborate;" indeed, "'something less' than a full evidentiary hearing is sufficient." Id. at 545. The key requirement is that the employee is entitled to a pre-termination opportunity to respond; more specifically, "to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546. Because it is followed by post-termination proceedings, the pre-termination hearing is not meant to resolve definitively the propriety of the discharge, but only to determine whether there are reasonable grounds to believe the charges are true and the action is correct. Id. at 546-47.

Had the City's pre-termination procedures been cursory and informal, Plaintiffs would have a stronger argument in favor of requiring the City to bear the burden of proof in the post-termination hearings. Here, however, they received adequate, even extensive, pre-termination procedures. The district court found:

> [I]t is undisputed that the City sent each plaintiff written notice of the pre-termination hearing approximately seven days in advance of the hearing. The notice informed plaintiffs of the alleged violations, that they could respond in writing or orally to the charges, that they were free to retain counsel and that they could face disciplinary action, including termination. Plaintiffs attended the pre-termination hearings and both were represented by Joseph Chavez, an AFSCME Council Representative. Subsequently, the City terminated both Mr. Smith and Mr. Benavidez as of May 12, 1992.

Append., doc. 19 at 244. Given these pre-termination procedures, the risk of an erroneous deprivation was minimized, tipping the balance in favor of a post-termination process in which Plaintiffs were only entitled to "some opportunity" to present their side of the case. The City's post-termination process included hearings at which Plaintiffs could be represented by counsel, had the opportunity to present evidence, and were allowed to cross-examine witnesses. Mr. Smith and Mr. Benavidez had the right to appeal the Board's decision to the state district court, but chose not to do so.

The third Mathews factor weighs the City's interest, including any burden imposed by additional procedures. Allocating the burden of proof to the City would require no additional hearings or investigation because the City already is required to provide a post-termination hearing and it already should have investigated the alleged misconduct and compiled evidence to support its proposed disciplinary action. Nevertheless, the City has

- 14 -

a strong interest in maintaining a drug-free workplace.  See Von Raab, 489 U.S. at 674

(American workplaces are not immune from "drug abuse [which] is one of the most

serious problems confronting our society today."); Rutherford, 77 F.3d at 1264.  It is also

a "common-sense realization that government offices could not function if every

employment decision became a constitutional matter."  Von Raab, 489 U.S. at 666

(quoting Connick v. Myers, 461 U.S. 138, 143 (1983).

The outcome of the Mathews test in this case ultimately turns on the nature of the

pre-termination protections afforded Mr. Smith and Mr. Benavidez.  Combined with the

City's elaborate pre-termination proceedings, the post-termination hearings provided Mr.

Smith and Mr. Benavidez with all the process they were due.  Accordingly, Plaintiffs'

procedural due process rights were not violated by the City requiring them to bear the

burden of proof at their post-termination hearings.

AFFIRMED.