**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 6 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHRISTOPHER URBAN,

   Plaintiff-Appellant,

v.

TULAROSA, an Incorporated Village;
REYNALDO GUILEZ, Chief of
Police in his private and official
capacities; MARGIE TRUJILLO,
Village Trustee, in her private and
official capacities; JENI
ALEXANDER, Village Trustee, in her
private and official capacities; FRED
UTTER, Village Trustee in his official
capacity,

   Defendants-Appellees.

No. 97-2292
(D.C. No. CIV-97-224-M)
(D. N.M.)

---

**ORDER AND JUDGMENT**   *

---

Before **BRORBY** , **McKAY** , and **BRISCOE** , Circuit Judges.

---

\*   This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff Christopher Urban appeals the district court's dismissal of his 42 U.S.C. § 1983 complaint under Fed. R. Civ. P. 12(c) in favor of the village of Tularosa, the village's police chief in his official and individual capacity, and three of the village trustees, who are members of the village council, in their official and personal capacities. Plaintiff brought a § 1983 action against defendants following his termination as a village police officer in 1996. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

## I. Standard of Review.

"Where a party moves to dismiss pursuant to Fed. R. Civ. P. 12(c), we will review the judgment on the pleadings under the standard of review applicable to a [Fed. R. Civ. P.] 12(b)(6) motion to dismiss." McHenry v. Utah Valley Hosp., 927 F.2d 1125, 1126 (10th Cir. 1991). Therefore, "[w]e review the sufficiency of a complaint de novo and will uphold a dismissal of a complaint only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief." Coosewoon v. Meridian Oil Co., 25 F.3d 920, 924

(10th Cir. 1994). "We must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Id. The dismissal of a complaint is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." Summum v. Callaghan, 130 F.3d 906, 913 (10th Cir. 1997) (quotations omitted).

## II. Background.

Plaintiff was hired as a village police officer in June 1994. Although state law requires a police officer to complete training at the New Mexico Law Enforcement Academy within a year of being hired, the village police department did not send plaintiff to the Academy until January 1996. Before then, plaintiff was allowed to act as a police officer even though he had not yet attended the Academy.

In January 1996, plaintiff's mother put a political sign up in her front yard supporting the political opponent of defendant Margie Trujillo. Trujillo is a trustee on the village council, and is the sister of defendant Reynaldo Guilez, the village police chief. In February 1996, plaintiff failed to pass the Academy training. The village council met in February 1996 to discuss his failure to obtain

the Academy certification.[1]  The majority voted to allow plaintiff to return to the Academy, with a warning that he would be terminated if he failed to obtain the necessary certification.  Defendants Trujillo and Alexander voted in the minority to immediately terminate plaintiff.

The village council also discussed an allegation that plaintiff had improperly used a village credit card issued to him to cover expenses related to attending the Academy.  Plaintiff's complaint stated this discussion took place at a special council meeting in March 1996.  However, both sides later agreed in their Rule 12(c) pleadings that the credit card discussion actually took place during the February 1996 council meeting, and that there had been no subsequent meeting in March 1996.

Plaintiff alleges that his direct supervisor told him the village credit card could be used to cover all his expenses related to his Academy training.  Plaintiff used it for oil, gas, food and, with the prior permission of his supervisor, to buy a water pump for his car, which he used to drive to the Academy.  In fact, the card was only supposed to be used for oil and gas.  Plaintiff's complaint states he explained his misunderstanding to the council, and the council voted to allow him

---

[1]     Plaintiff learned at his post-termination hearing that, after he failed his Academy training, defendant Guilez immediately recommended to the village mayor and the village council that plaintiff be fired for failing to pass the Academy training, and that before the council meeting had even occurred, he had marked plaintiff's payroll records to reflect that he had been terminated.

to reimburse the village, although defendants Trujillo and Alexander voted against allowing him to do so. The credit card charges were deducted from plaintiff's wages. The council did not know about the water pump charge until April 1996, but plaintiff alleges that when he was notified about this charge in April, he promptly reimbursed the village for that charge as well. Plaintiff was reissued a village credit card when he returned to the Academy, although he did not use it.

Plaintiff obtained the Academy certification in June 1996. Several days later, at a June council meeting, defendants Trujillo, Alexander and Utter, a majority of the trustees in attendance, voted to terminate plaintiff because of his earlier credit card misuse.[2] Plaintiff's complaint asserts that he was not at the June council meeting, and first learned his employment status was the subject of the meeting after the decision to terminate him had been made and announced at the meeting. The trustees who had previously voted to allow plaintiff to reimburse the village for the charges were not in attendance at the June 1996 council meeting. Plaintiff alleges that he was never told by his supervisor or any one else in the police department that his mistaken use of the credit card

---

[2]     Plaintiff learned at his post-termination hearing that his termination had been requested by defendant Guilez.

constituted conduct which fell below acceptable standards and that he was never told by anyone that his job was in jeopardy because of his credit card use.

Plaintiff then filed this § 1983 action alleging that he was terminated in violation of his First Amendment rights because the retaliatory actions began soon after his mother put up a sign in her yard supporting the political opponent of defendant Trujillo (also defendant Guilez' sister). Plaintiff also alleges that defendants violated his procedural due process rights because he was terminated without the pretermination notice and hearing required by Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985). According to the complaint, the village's personnel policy manual states that a full-time regular employee has an expectation of continuing employment. Plaintiff alleges that defendants failed to follow the termination procedures set forth in both the village personnel policy manual and in New Mexico statutes providing for the discipline of police officers. Plaintiff did receive a full post-termination hearing in September 1996, at which he was represented by counsel. The village council affirmed its June 1996 vote to terminate plaintiff. Plaintiff does not contend that the post-termination hearing violated his due process rights.

Defendants moved for judgment on the pleadings under Rule 12(c). The district court granted the motion. The district court held that plaintiff could not assert a First Amendment claim because the political sign was his mother's

political speech, not his. With respect to plaintiff's procedural due process claim, the district court held that plaintiff did have a property interest in his job because he had passed the Academy training in June 1996 and, therefore, was a regular, full-time employee at the time he was terminated. However, the district court held that plaintiff knew in February that his employment as a police officer was in jeopardy because of his failure to pass the Academy training, and that this knowledge constituted prior notice of possible termination when the credit card discussion took place later in March 1996, relying on the mistaken allegation, corrected by both parties in their Rule 12(c) pleadings, that the credit card discussion took place in March. The district court also concluded that plaintiff had explained his credit card use at the "March" meeting, and, thus, had a full opportunity to explain his side of the story. The district court held the "March" meeting was, as a matter of law, a sufficient pretermination hearing because plaintiff had received both prior notice and an opportunity to present his side of the story.

## III. Analysis.

### A. First Amendment Claim.

Plaintiff argues that he was fired in retaliation for the political sign his mother placed in her yard supporting defendant Trujillo's opponent. However, as the district court recognized, the sign was his mother's political speech, not

plaintiff's. Ordinarily, litigants must assert their own legal rights and interests, and cannot rest their claims on the legal rights or interests of third parties. <u>See, e.g.</u>, <u>Secretary of State of Md. v. Joseph H. Munson Co.</u>, 467 U.S. 947, 955 (1984) (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975)); <u>Archuleta v. McShan</u>, 897 F.2d 495, 497 (10th Cir. 1990) (holding that § 1983 claims must be based on the violation of the plaintiff's personal rights, not the rights of someone else).

Plaintiff argues that he suffered injury because defendants retaliated against him for his mother's speech and that such retaliation has a chilling effect on free speech. The Supreme Court has recognized limited circumstances in which plaintiffs may assert the free speech rights of another person, in part because of policy considerations relating to potential chilling effects on the free speech rights of others.[3] However, plaintiff's complaint does not plead any such circumstances in this case. <u>See</u> <u>Phelps v. Hamilton</u>, 122 F.3d 1309, 1326 (10th Cir. 1997) (standing cannot be inferred argumentatively from averments in

---

[3] The Supreme Court has recognized limited circumstances in which a litigant may bring a First Amendment action on behalf of third parties where the litigant is making a facial challenge to a statute that inhibits others from engaging in protected speech if the litigant suffered an "injury in fact." <u>See, e.g.</u>, <u>Virginia v. American Booksellers Ass'n</u>, 484 U.S. 383, 392-93 (1988) (injury in fact and facially broad statute may cause others to refrain from free speech); <u>Secretary of State of Md. v. Joseph H. Munson Co.</u>, 467 U.S. 947, 956-58 (1984) (over broad statute, third party suffered injury in fact and can be expected to properly frame the issue and present it with adversarial zeal).

the pleadings).  Thus, the district court did not err in dismissing plaintiff's First Amendment claim.

## B. Procedural Due Process Claim.

## 1. Adequacy of Pretermination Process.

It is well established that due process requires that a public employee with a property interest in continued employment is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before he is terminated.  Loudermill, 470 U.S. at 546.  Defendants do not dispute the district court's conclusion that plaintiff had a protected property interest in continued employment with the village, or its conclusion that they were not entitled to qualified immunity.

The purpose of the pretermination hearing is to serve as "an initial check against mistaken decisions -- essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  Id. at 545-46.  The due process clause does not require an "elaborate" or formal pre-termination hearing, and the hearing need not "definitively resolve the propriety of the discharge."  Id. at 545.  All that is required is "notice and an opportunity to respond."  Id. at 546.  We have held, however, that "implicit in the notice and opportunity to be heard elements is the

requirement that the employee be made aware that his employment is in jeopardy of termination." Calhoun v. Gaines , 982 F.2d 1470, 1476 (10th Cir. 1992).

Plaintiff acknowledges that he was questioned about his credit card use at the February council meeting; thus, defendants argue that the February meeting constituted his pretermination notice because he had an opportunity to be heard. However, according to the complaint, plaintiff never knew that his job was in jeopardy because of his mistaken credit card charges. Thus, when his credit card use was discussed, plaintiff did not know that the village council was considering termination based upon that ground.

The district court concluded that because plaintiff knew his job was in jeopardy as a result of his failure to pass the Academy training, he must have known his job was further jeopardized because of the credit card misuse. The district court stated that plaintiff "knew the March meeting was a 'special meeting' called to review the Trustees' decision to allow him another opportunity to pass the certification process because of serious charges of unauthorized credit card use," R. at 72, and that plaintiff "cannot dispute that he was independently aware that the March meeting was called for the specific purpose of deciding his employment fate," id. at 73. Because both sides agreed in their Rule 12(c) pleadings there had been only the February meeting, the record does not support the district court's conclusion that plaintiff knew the nonexistent subsequent

-10-

meeting had been called to reconsider the February vote in light of the credit card issue. Further, nothing in the record supports the district court's conclusion that plaintiff had any actual or constructive knowledge that any council discussion of his credit card use related to his continued employment. The district court's conclusions were based on mere inference, and ignore plaintiff's assertion that he did not know his job was in jeopardy because of the credit card misuse. Thus, the district court failed to accept all the well-pleaded allegations of the complaint as true and to construe them in the light most favorable to the plaintiff. See Coosewoon , 25 F.3d at 924. The district court also concluded that plaintiff had "fully explained" his credit card use at the council meeting and, therefore, had a full opportunity to be heard under Loudermill. R. at 72. This conclusion is not borne out by the pleadings. Plaintiff's complaint states only that he discussed his credit card use with the council, see R. at 7, not that he "fully" explained his side of the story in response to any notice on his part that his employment was in jeopardy. When applying Calhoun to the facts pled, plaintiff did not receive adequate notice or an opportunity to be heard. Therefore, the district court erred in concluding that the February meeting constituted a constitutionally adequate pretermination hearing as a matter of law.[4]

_____

[4] Plaintiff also argues that, if the February meeting is held to constitute his pretermination hearing, it was inadequate because he did not receive advance

(continued...)

-11-

2. Effect of Post-termination Hearing.

Defendants argue on appeal that plaintiff had at least minimal

pretermination due process    because he had contemporaneous notice of the charges

and an opportunity to explain his side of the story at the February meeting; thus,

because plaintiff received a full post-termination hearing, he received all the

process to which he was entitled.  It is true that the adequacy of pretermination

procedures must be examined in light of available post-termination procedures.

See Langley v. Adams County  , 987 F.2d 1473, 1480 (10th Cir. 1993);    Benavidez

v. City of Albuquerque  , 101 F.3d 620, 626 (10th Cir. 1996) ("[w]hen the

pre-termination process offers little or no opportunity for the employee to present

his side of the case, the procedures in the post-termination hearing become much

more important.").

However,  Loudermill  holds that a post-termination hearing alone is

ordinarily insufficient to satisfy the requirements of due process.  470 U.S.

at 544-45.  At this stage of the proceedings, on the facts alleged, it is questionable

---

[4](...continued)
notice of the charges against him; that is, he was not told there would be any
questions about his credit card use until the meeting, which was ostensibly called
only for the purpose of considering whether to terminate him because of his
failure to pass the initial Academy training.  However, we have held that
Loudermill  does not require pre-notification notice, and that there need not be any
delay between the "notice" and the "opportunity to be heard."        See Powell v.
Mikulecky , 891 F.2d 1454, 1459 (10th Cir. 1989).

whether plaintiff received <u>any</u> pretermination hearing with respect to his credit card use. As noted above, plaintiff was never told his job was in jeopardy because of his credit card charges. Further, any questions about his card use appeared fully resolved. At the conclusion of the February meeting, the council voted to allow plaintiff to remain a police officer and gave him a second chance to obtain Academy certification. Plaintiff was allowed to reimburse the village for the mistaken credit card charges, he satisfactorily repaid the village for the charges, was reissued another village credit card and was aware of no effect on his continued employment based on the credit card charges. Then, without prior notice, plaintiff was terminated because of the unauthorized charges four months after the February meeting. Given these facts, we think it at least a question of fact whether the discussion held four months prior to plaintiff's termination could be considered a pretermination hearing with respect to his credit card use. <u>See</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) (stating that the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner). Judgment on the pleadings is not appropriate where there are unresolved material issues of fact. Here, whether plaintiff received an adequate pretermination notice turns on the factual context and content of the hearing, the actions of the parties following the hearing and whether plaintiff was

ever made aware that his job with the police department was in jeopardy because of his mistaken card use.

The defendants next rely upon a line of Supreme Court cases recognizing certain circumstances in which a full post-deprivation hearing alone is held to satisfy the due process clause. In Parratt v. Taylor, 451 U.S. 527, 539-41 (1981) overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330 (1986), and its progeny, Hudson v. Palmer, 468 U.S. 517, 533 (1984), the Supreme Court held that due process did not require predeprivation hearings where there is a need for quick action or where the deprivation is the result of a random and unauthorized act. In circumstances where a predeprivation proceeding is impossible or impracticable, all that due process requires, the Court said, is a post-deprivation "means of redress for property deprivations satisfy[ing] the requirements of procedural due process." Parratt, 451 U.S. at 537; accord Hudson, 468 U.S. at 533. The Court reasoned that post-deprivation remedies satisfy due process in such cases because, "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." Hudson, 468 U.S. at 533.

Defendants argue that, if we conclude plaintiff did not receive an adequate pretermination hearing, we can, nevertheless affirm under Parratt and Hudson,

because the action of the village council in terminating plaintiff without an adequate pretermination hearing was not authorized by the village and was a random, unpredictable event; therefore, the post-termination hearing was all that was necessary to satisfy due process. We disagree.

The Supreme Court has explained that " Parratt and Hudson represent a special case . . . in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." Zinermon v. Burch , 494 U.S. 113, 128 (1990). The Court made clear that an adequate post-deprivation remedy is a defense to a § 1983 due process claim only where the deprivation is unpredictable, or random and unauthorized. Id. at 136-38. "In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." Zinermon , 494 U.S. at 132.

Here, there is no evidence that quick action was necessary, that plaintiff's termination was random or unauthorized, or that pretermination process was impracticable or impossible. Clearly, the actions of the defendant trustees and defendant Guilez were neither random nor unforeseeable. These defendants cannot claim plaintiff's termination was unpredictable to them: plaintiff alleges that defendant Guilez requested the council to terminate plaintiff, and that the

defendant trustees considered and voted on his termination at a regularly scheduled council meeting. These defendants could certainly foresee that they were terminating plaintiff and could prevent a wrongful termination by giving him notice and opportunity to be heard prior to his termination. Defendants state that the village did not authorize its agents to terminate plaintiff in violation of established procedure, in essence arguing that the actions of the defendant trustees were unauthorized. There is no evidence in the record at this stage of the proceedings suggesting that the village had not delegated to the defendant trustees, as members of the village council, "the power and authority to effect the very deprivation complained of here," id. at 138, that is, the power to terminate plaintiff's employment. Therefore, their conduct was not "unauthorized" in the sense that the term is used in Parratt and Hudson. Id. at 138. When defendants are the individuals charged with ensuring that proper procedures are followed, and those same defendants "fail to provide constitutionally required procedural safeguards to a person whom they deprive of liberty [or property], the state officials cannot then escape liability by invoking Parratt and Hudson." Id. at 135.

In summary, we conclude the district court's Rule 12(c) dismissal of plaintiff's procedural due process claim under § 1983 was erroneous, and that claim must be remanded for further proceedings consistent with this opinion, but

-16-

we conclude that plaintiff's First Amendment claim under § 1983 was properly dismissed.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.

Entered for the Court


Mary Beck Briscoe
Circuit Judge
