**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 1 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CANDILYN COPELIN-BROWN,

    Plaintiff - Appellee,

v.

NEW MEXICO STATE PERSONNEL
OFFICE, a New Mexico State Agency,

    Defendant,

        and

SHERRY SMITH; GIP BROWN;
SANDRA K. PEREZ, individually and
as supervisors of the New Mexico
State Personnel Office,

    Defendants - Appellants.

No. 04-2099

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-02-1638-LH/JHG)**

---

George T. Geran (and Michele Masiowski, Serra, Garrity & Masiowski, L.L.C.,
with him on the brief), Santa Fe, New Mexico, for Plaintiff - Appellee.

Kevin M. Brown (and Daniel J. Macke, with him the briefs), Brown & German,
Albuquerque, New Mexico, for Defendants - Appellants.

---

Before **KELLY**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendants-Appellants New Mexico State Personnel Office ("SPO"), Sherry Smith, Gip Brown, and Sandra Perez, supervisors and directors of the SPO, appeal from the denial of qualified immunity after a grant of summary judgment in favor of Plaintiff-Appellee Candilyn Copelin-Brown on her claims for violations of the Due Process and Equal Protection Clauses of the United States Constitution and breach of contract. They claim that Ms. Copelin-Brown does not have standing to challenge the regulation in question, that the district court erroneously found violations of the Due Process and Equal Protection Clauses, that the individual defendants are entitled to qualified immunity, and that the district court erroneously found a breach of contract. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm as to qualified immunity. We lack jurisdiction as to the breach of contract claim.

Background

Ms. Copelin-Brown was employed in the New Mexico SPO for four years. Aplee. Br. at 4. When she was initially hired, Ms. Copelin-Brown worked as a receptionist. Aplee. Br. at 4. She was later reassigned to a different position that required a great deal more computer work. Aplee. Br. at 4. This type of work

exacerbated her problems with migraine headaches. Aplee. Br. at 4. Health problems related to these migraines caused Ms. Copelin-Brown to have numerous absences from work. Aplt. Br. at 5; Aplee. Br. at 4. Over time, Ms. Copelin-Brown's condition worsened, and she became unable to perform the tasks her position required. Aplt. Br. at 5. Ms. Copelin-Brown applied for numerous other positions in the SPO, including her former receptionist position, but Defendants Perez and Brown determined that Ms. Copelin-Brown could not perform any computer work and did not transfer her to another position within the SPO. Aplee. Br. at 4.

On June 1, 2001, Ms. Copelin-Brown was informed that she would be fired from her job on June 15, 2001, if she could not perform, pursuant to a New Mexico state regulation. N.M. Admin. Code tit. 1, § 7.10.13. Aplt. Br. at 5; Aplee. Br. at 6. This regulation applied only to employees who are physically or mentally unable to perform their jobs. Aplt. Br. at 6; Aplee. Br. at 6. The regulation, unlike the regulation concerning termination for non-disabled employees, N.M. Admin. Code tit. 1, § 7.11.10, did not provide the terminated employee with a right of appeal. Aplee. Br. at 6. The regulation did require that the employer make reasonable efforts to find other suitable vacant positions and document all efforts to accommodate the employee's medical restrictions. N.M. Admin. Code tit. 1, § 7.10.13(B).

Ms. Copelin-Brown filed suit alleging breach of contract, breach of an implied covenant of good faith, a § 1983 claim alleging violations of equal protection and due process, and a § 1985 claim of civil conspiracy. Aplt. Br. at 3. Upon cross-motions for summary judgment, the district court granted Ms. Copelin-Brown's motion with regard to the § 1983 claim against the individual defendants and the breach of contract claim, finding an implied employment contract sufficient to waive governmental immunity. App. at 327-28. The district court granted Defendants' motion for summary judgment with regard to the § 1985 claim and the § 1983 claim asserted against the government and officers in their official capacity. Id.

## Discussion

"We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court." Benavidez v. City of Albuquerque, 101 F.3d 620, 623 (10th Cir. 1996). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, we view the evidence in the light most favorable to the non-movant. Kingsford v. Salt Lake City Sch. Dist., 247 F.3d 1123, 1128 (10th Cir.

2001).

A. Standing

It is well established that to litigate a justiciable controversy, the plaintiff must have standing to maintain suit. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Morgan v. McCotter, 365 F.3d 882, 887 (10th Cir. 2004). "There are three requirements of Article III standing. First, the plaintiff must suffer an injury in fact. An injury in fact is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical." Essence, Inc. v. City of Fed. Heights, 285 F.3d 1272, 1280 (10th Cir. 2002) (internal citations and quotations omitted). A plaintiff must also demonstrate that (2) the harm complained of is fairly traceable to the defendant's conduct and (3) that a favorable ruling from the court would redress plaintiff's injury. Id.

Defendants first challenge the district court's grant of summary judgment by arguing that Ms. Copelin-Brown lacks standing, citing Morgan. In short, they argue that Ms. Copelin-Brown has suffered no injury in fact since she receives total disability benefits, and further due process hearings would not have alleviated any harm. Aplt. Br. at 28-29.

Whether a denial of due process constitutes an injury in fact requires the court to determine whether, "assuming the truth and validity of all of a plaintiff's

factual allegations and legal theories, the due process protections would have alleviated any harm." Morgan, 365 F.3d at 889. In Morgan, the court found that the plaintiff lacked standing because he failed to show "any intention, desire, or plan to continue his employment in a career service position with the State of Utah." Id. at 888. In the instant case, unlike Morgan, Ms. Copelin-Brown applied for numerous positions in the SPO, including her former receptionist position, Aplee. Br. at 4, thus exhibiting a desire, intention, or plan to continue employment with the State of New Mexico. Thus, she has suffered an injury in fact from the loss of her eligibility and consideration for such positions.

Regarding Defendants' argument that Ms. Copelin-Brown suffered no injury in fact because she concedes that she was severely disabled and thus could not have prevailed if a hearing were provided, Article III standing does not require that Ms. Copelin-Brown would obtain concrete relief from the desired process. Lujan, 504 U.S. at 573 n.7; Rector v. City & County of Denver, 348 F.3d 935, 943 (10th Cir. 2003) ("Parties may suffer injury in fact from defective procedures even if, at the end of the day, they would not have prevailed on the merits."). Of course, "the Constitution does not protect procedure for procedure's sake." Rector, 348 F.3d at 943. Rather, "there must be some factual dispute between an employer and a discharged employee" that has some significance. Codd v. Velger, 429 U.S. 624, 627 (1977). In other words, if Ms. Copelin-Brown

"does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result." Id. at 627-28.

In this case, although Ms. Copelin-Brown does not claim that she was not permanently disabled, she does argue that the SPO failed to comply with state regulations by failing to properly document attempts to accommodate her medical restrictions or make reasonable efforts to find other suitable positions. N.M. Admin. Code tit. 1, §§ 7.10.13(B)(1) & (2). Thus, at the time of her termination, there was a significant dispute between Ms. Copelin-Brown and Defendants that could have been resolved in a post-termination hearing.

Ms. Copelin-Brown has also satisfied the second requirement of traceability by clearly demonstrating that the named defendants were responsible for this alleged deprivation, a fact that is not disputed. Finally, the state argues that because Ms. Copelin-Brown receives total disability benefits, a favorable ruling from the court would fail to redress her injury. However, even if Ms. Copelin-Brown's dismissal was justified on the merits, her right to procedural due process entitles her to at least nominal damages. See Carey v. Piphus, 435 U.S. 247, 266 (1978). Thus, court-awarded compensation would properly redress Ms. Copelin-Brown's injury.

B. Fourteenth Amendment Violations

1. Due Process

The Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision." Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs., 936 F.2d 483, 490 (10th Cir. 1991). "To determine whether a plaintiff was denied procedural due process, we engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" Hennigh v. City of Shawnee, 155 F.3d 1249, 1253 (10th Cir. 1998).

Property interests are not created by the Constitution, but rather by independent sources such as state law. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). "[W]hen a person's employment can be terminated only for specified reasons, his or her expectation of continued employment is sufficient to invoke the protections of the Fourteenth Amendment." West v. Grand County, 967 F.2d 362, 366 (10th Cir. 1992). New Mexico law clearly states that employees that have completed a probationary period of one year may only be terminated for just cause. N.M. Stat. Ann. § 10-9-18(F); Barreras v. State of N.M. Corrs. Dept., 62 P.3d 770, 775 (N.M. Ct. App. 2002); N.M. Admin. Code tit. 1, § 7.11.10 (only non-disabled employees).

Nevertheless, Defendants first argue that because the regulation in question states that a permanently disabled employee can be terminated without a hearing or opportunity to appeal, Ms. Copelin-Brown has no protected property interest. Aplt. Br. at 12-14. Defendants also argue that there is no legitimate expectation of continued employment when the essential functions of one's job cannot be performed. Aplt. Reply. Br. at 8-9. We disagree. The challenged regulation provides that certain determinations must be made before the employee may be terminated because of permanent disability, such as whether the disability is permanent, whether accommodations have been made, and whether the state had considered the employee for other positions. These restrictions on the government's ability to terminate are sufficient to create a property interest in Ms. Copelin-Brown. Hennigh, 155 F.3d at 1253-54. Moreover, to accept the government's contrary argument would be to allow the government, at any time, to unilaterally declare an employee disabled and terminate that employee without a hearing, thus avoiding due process protections.

Once a protected property interest is established, the question then becomes what level of process is appropriate. In general, a post-termination hearing is required. Loudermill, 470 U.S. at 546-47 (stating that the "Due Process Clause requires provision of a hearing 'at a meaningful time'" after termination). Even when the employer articulates a permissible reason for discharge, "[w]ithout

adequate due process protection, an employee . . . can never discover whether the reasons for her discharge are true – or are false and a mere subterfuge." Goudeau v. Indep. Sch. Dist. No. 37 of Okla. City, Okla., 823 F.2d 1429, 1431 (10th Cir. 1987).

In this case, Ms. Copelin-Brown challenges only the efficacy of the post-termination process. To evaluate the constitutionality of post-termination process, we must view it in light of the pre-termination procedures it follows. Where, as here, the pre-termination process offers minimal opportunity for the employee to present her side of the case, the procedures in the post-termination hearing become much more important. Benavidez, 101 F.3d at 626. "Such a post-termination hearing represents the only meaningful opportunity the employee has to challenge the employer's action . . . . " Id. In the instant case, Ms. Copelin-Brown, under N.M. Admin. Code tit. 1, § 7.10.11, was afforded no post-termination hearing or opportunity to appeal the SPO's decision to terminate her. Accordingly, the district court was correct in finding that the lack of procedural due process violated Ms. Copelin-Brown's constitutional rights.

2. Equal Protection

The Fourteenth Amendment also prohibits a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Both parties agree that disabled persons are a non-suspect class and rational

- 10 -

basis scrutiny applies.  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432,

442-46 (1985); Davoll v. Webb, 194 F.3d 1116, 1145 (10th Cir. 1999).  Under the

rational basis test, the court upholds the policy "if there is 'any reasonably

conceivable state of facts that could provide a rational basis for the

classification.'" Spragens v. Shalala, 36 F.3d 947, 951 n.3 (10th Cir. 1994)

(quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993)).

As Defendants point out, the administrative ease of not requiring a hearing

can be "a reason sufficient to withstand rationality review." Cf. Davoll, 194 F.3d

at 1146.  However, Defendants' answer, response to Plaintiff's motion for

summary judgment, and appellate briefs fail to present any facts showing that the

regulation in question eased administrative burdens.  Further, the Court has stated

that within rational basis scrutiny, "[t]he State may not rely on a classification

whose relationship to an asserted goal is so attenuated as to render the distinction

arbitrary or irrational." City of Cleborne, 473 U.S. at 446.  In the instant case,

because Defendants have only alluded to the administrative burdens associated

with providing disabled persons post-termination hearings or appeals, we find the

distinction between disabled and non-disabled persons arbitrary and irrational.

Alternatively, Defendants argue that because terminated disabled

employees are not provided a hearing, they are dismissed without prejudice.

Thus, Defendants argue they are not stigmatized by being labeled as "disabled."

However, regardless of the label attached, the employee will nevertheless have to describe the cause of her termination when seeking future employment. If the employee does not seek future employment, the effect of any stigma would be minimal. Thus, the purported goal of preventing stigma is irrational. In conclusion, because the relationship between the distinction based on disability and the government's interest are so attenuated and because refusing administrative hearings and appeals to avoid stigma is irrational, the regulation cannot pass muster under the rational basis standard.

C. Qualified Immunity

We review de novo a district court's ruling on qualified immunity. Farmer v. Perrill, 288 F.3d 1254, 1259 (10th Cir. 2002). To determine whether a plaintiff can overcome the qualified immunity defense, "first we determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right." Garramone v. Romo, 94 F.3d 1446, 1449 (10th Cir. 1996) (citation omitted).

As previously discussed, Ms. Copelin-Brown has adequately demonstrated a violation of her constitutional rights. Thus, we turn directly to the question of whether those constitutional rights were "'sufficiently clear that a reasonable official would understand that what he is doing violates'" them. Hannula v. City

of Lakewood, 907 F.2d 129, 131 (10th Cir. 1990) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In doing so, we must focus only on the state of the law at the time of the defendant's actions. Id.

In this case, Ms. Copelin-Brown has clearly demonstrated that federal law, Roth, 408 U.S. at 576-77, and, in general, New Mexico law, N.M. Stat. Ann. § 10-9-18(A), require that when a state employee is terminated, that employee has a right to a hearing to challenge the termination. Moreover, the termination of a permanent state employee requires the opportunity for a post-termination hearing and appeal. Loudermill, 470 U.S. at 546-47. The government's argument that the presence of the regulation in question on the books absolves any liability is without merit since "the presence of a statute is *not* relevant to the question of whether the law is 'clearly established.'" Roska v. Peterson, 328 F.3d 1230, 1252-53 (10th Cir. 2003) (emphasis in original).

Defendants also argue that qualified immunity is appropriate because "all but the plainly incompetent or those who knowingly violate the law" are entitled to immunity from suit. Malley v. Briggs, 475 U.S. 335, 341 (1986). At the same time, the Court has stated that "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). In this case, the law has been established for thirty years; the Due

- 13 -

Process Clause requires the state to provide an opportunity for a hearing whenever a permanent state employee is terminated. Roth, 408 U.S. at 577. Moreover, New Mexico law provides permanent, non-disabled employees a right to appeal their termination. N.M. Stat. Ann. § 10-9-18(A).

While the Defendants' argue that they should not be held liable because they were only enforcing state law, this is only one factor in our analysis. Roska, 328 F.3d at 1253. Defendants in this case were not mere minions obeying commands, but rather were directors and supervisors of the New Mexico SPO. Aplt. Reply. Br. at 1-2. Thus, they have expertise in the hiring and firing of state employees, including relevant state and federal law. Accordingly, we find that the law in question was clearly established and a reasonable director or supervisor of the state SPO would have known that his or her activity violated Ms. Copelin-Brown's constitutional rights.

D. Contract Claim

Defendants also challenge the district court's grant of summary judgment with regard to Ms. Copelin-Brown's suit for breach of contract. Aplt. Br. at 19. However, in resolving cross-motions for summary judgment, the district court did not rule on Ms. Copelin-Brown's second claim, alleging breach of an implied covenant of good faith and fair dealing asserted against the SPO. Nevertheless, a decision not concluding proceedings in the district court can, under certain

limited circumstances, present an interlocutory appeal which may be heard by an appellate court. Johnson v. Jones, 515 U.S. 304, 315-16 (1995).

In the instant case, Defendants' argue that we may hear their appeal because the breach of contract claim is inextricably intertwined with the due process issue. This argument must fail for two reasons. First, the breach of contract claim is not necessarily related in any way to a violation of due process. Rather, the district court seemed to find that Defendants breached an implied employment contract by not properly performing the procedures required by the statute in question. Second, although we have jurisdiction to consider the appeal of the denial of qualified immunity, Armijo v. Wagon Mound Pub. Sch., 159 F.3d 1253, 1258 (10th Cir. 1998), only issues inextricably intertwined with the qualified immunity holding, such as the § 1983 due process and equal protection claims, are subject to interlocutory appeals. Stewart v. Oklahoma, 292 F.3d 1257, 1260 (10th Cir. 2002); Moore v. City of Wynnewood, 57 F.3d 924, 929-30 (10th Cir. 1995). We fail to see such a relationship between the breach of contract claim and the district court's qualified immunity finding. Thus, we lack jurisdiction to hear Defendants' appeal of the contract claim.

AFFIRMED.