Sherman LOLLIS, Plaintiff–Appellant,

v.

The CITY OF EUFAULA, a municipal corporation; Bill Day, Mayor, in his official and individual capacity; Larry Osmond, Chief, in his individual and official capacity, Defendants–Appellees.

No. 06–7078.

United States Court of Appeals, Tenth Circuit.

Sept. 13, 2007.

N. Kay Bridger–Riley, Bridger–Riley & Associates, Tulsa, OK, for Plaintiff–Appellant.

James C. Hodges, Shannan Pinkham Passley, Rebecca Wood Hunter, Eller & Detrich, Tulsa, OK, for Defendants–Appellees.

Before TACHA, Chief Circuit Judge, SEYMOUR, and HOLMES, Circuit Judges.

## ORDER AND JUDGMENT *

DEANELL REECE TACHA, Chief Circuit Judge.

Plaintiff–Appellant Sherman Lollis filed an action in federal district court asserting claims under 42 U.S.C. § 1983 for deprivation of a property interest in his employment without due process, deprivation of a liberty interest in his reputation without due process, and race discrimination in violation of his equal protection rights. He also asserted race discrimination claims under 42 U.S.C. § 1981 and under state law. Defendants–Appellees City of Eufaula, Mayor Bill Day, and Eufaula Chief of Police Larry Osmond moved for summary judgment on all claims. The District Court granted the motion with respect to the §§ 1981 and 1983 claims and refused to exercise jurisdiction over the pendent state law claims. Mr. Lollis appeals the District Court's determination with respect to the §§ 1981 and 1983 claims. We exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Mr. Lollis, an African–American, was employed as a sergeant of the Eufaula Police Department. On Friday, April 4, 2003, Mr. Lollis's day off, he went to his brother's home near Taft, Oklahoma. While there, he drank some beer. Mr. Lollis was driving home to Eufaula when a Checotah, Oklahoma police dispatcher received three phone calls reporting a possible drunk driver. The dispatcher notified Checotah police automobile units of the report and broadcast the vehicle's tag number and the name of the registered owner of the vehicle, Sherman Lollis. Checotah police officer Tim Whisenhunt responded to the dispatch. He observed Mr. Lollis's vehicle traveling south on Highway 69, taking up two lanes of traffic. Officer Whisenhunt pulled over the vehicle; Mr. Lollis was the driver. Officer Whisenhunt believed Mr. Lollis to be intoxicated—noting that his eyes were bloodshot, he had slurred speech, and he smelled strongly of alcohol. Officer Whisenhunt also observed an open container of beer inside the vehicle. Mr. Lollis requested "professional courtesy" from Officer Whisenhunt, specifically that he allow Mr. Lollis to return to his home in Eufaula. At some point during this interaction, Checotah police officer Duane Snyder arrived on the scene and also noted the open can of beer, Mr. Lollis's bloodshot eyes, and the strong odor of alcohol. The Checotah officers agreed to extend Mr. Lollis "professional courtesy" and allowed Mr. Lollis to drive his vehicle under their escort to a truck stop less than a quarter of a mile away. They left his vehicle at the

* This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

truck stop, and Officer Snyder drove Mr. Lollis home.

Later that evening, Officer Snyder notified Eufaula Police Chief Larry Osmond that the Checotah officers had pulled over one of his officers, Mr. Lollis, on suspicion of driving under the influence of alcohol and that they had driven him home instead of placing him in jail. Chief Osmond requested written statements from the Checotah officers regarding the incident, which they provided. On April 7, the Monday following the incident, Chief Osmond held a meeting at the Eufaula police station with Mr. Lollis, Lieutenant Charles Hammett, and patrolman Wesley Dawson, a union representative. Chief Osmond explained that Mr. Lollis's behavior was a violation of the City's administrative code and the Police Department's code of ethics. He orally reprimanded Mr. Lollis, indicated that Mr. Lollis was being put on probation for one year, and informed him that the Police Department was going to seek approval from the City Council of a demotion in rank from sergeant to patrolman. Chief Osmond presented Mr. Lollis with a "Notice of Reprimand" and the statements from the Checotah officers. Mr. Lollis read the statements, signed the notice, stated that he "screwed up," and apologized for the incident.

In an April 8, 2003 memorandum from Chief Osmond to Mayor Bill Day, Chief Osmond related the incident involving Mr. Lollis and indicated that the Police Department would be seeking approval from the City Council of Mr. Lollis's demotion. Mr. Lollis, with his police union representative present, addressed the City Council in an executive session on April 10. The City Council approved the recommended demotion. On April 11, Mr. Lollis submitted a grievance regarding the demotion to Chief Osmond, which Chief Osmond denied. The union subsequently declined to pursue the grievance on Mr. Lollis's behalf. Mr. Lollis appealed the demotion, addressing the City Council a second time on May 5, 2003. The City Council upheld its prior decision.

In December 2005, Mr. Lollis initiated an action in federal district court against the Defendants, claiming violations of 42 U.S.C. §§ 1981 and 1983 and state law. The Defendants moved for summary judgment. Finding no disputed issue of material fact on any of Mr. Lollis's federal claims, the District Court dismissed those claims and refused to exercise jurisdiction over the state law claims. Mr. Lollis appeals.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo. *Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir.2006). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the record, and draw all reasonable inferences therefrom, in the light most favorable to the nonmovant. *Young*, 468 F.3d at 1249. The nonmovant cannot, however, rely on "ignorance of facts, on speculation, or on suspicion" to avoid summary judgment. *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988).

### A. Section 1983 Claims

To prevail on a § 1983 claim, a plaintiff must establish that "the defendants acted under color of state law and that the defendants' actions deprived the plaintiff of some federal right." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). The Defendants do not dispute that

they acted under color of state law. The question on each claim, therefore, is whether there are genuine issues of fact with respect to whether the Defendants deprived Mr. Lollis of a federal right.

### 1. Deprivation of a Property Interest Without Procedural Due Process

■ Mr. Lollis argues that he was deprived of a property interest in his rank of sergeant without due process, in violation of the Fourteenth Amendment, when he was demoted to patrolman. To succeed on a procedural due process claim, an individual must prove two elements: first, that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and second, that he was not "afforded an appropriate level of process." *Copelin–Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1254 (10th Cir.2005) (quotation omitted). The District Court granted summary judgment after finding that Mr. Lollis did not establish a triable issue of material fact as to whether he received sufficient process.

The parties do not dispute that Mr. Lollis possessed a protected property interest in his rank of sergeant. Mr. Lollis's procedural due process claim thus turns on whether the Defendants provided him the appropriate level of process when demoting him. "[I]t is purely a matter of federal constitutional law whether the procedure afforded was adequate." *Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir.2003). When an employee has a constitutionally protected property interest in his employment, the Due Process Clause generally requires "some kind of a hearing" prior to the employment decision. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (internal quotation marks omitted). The purpose of the predetermination hearing is to serve as

"a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. 1487. At a minimum, the hearing requires: "(1) 'oral or written notice [to the employee] of the charges against him;' (2) 'an explanation of the employer's evidence and [3] an opportunity [for the employee] to present his side of the story.'" *Montgomery*, 365 F.3d at 936 (quoting *Loudermill*, 470 U.S. at 546, 105 S.Ct. 1487) (alterations in original).

Due process also requires postdetermination proceedings. *See Copelin–Brown*, 399 F.3d at 1255 ("[T]he Due Process Clause requires provision of a hearing at a meaningful time after termination." (quoting *Loudermill*, 470 U.S. at 546–47, 105 S.Ct. 1487) (internal quotation marks omitted)). We evaluate the sufficiency of the postdetermination procedure by viewing it in light of the predetermination procedure it follows. When the employee has a meaningful opportunity to explain his position and challenge his demotion prior to the decision, "the importance of the procedures in the post-[determination] hearing is not as great." *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996). In this situation, "simply giving the employee 'some opportunity' to present his side of the case 'will provide a meaningful hedge against erroneous action.'" *Id.* (quoting *Loudermill*, 470 U.S. at 543 n. 8, 105 S.Ct. 1487).

Here, the undisputed facts demonstrate that the Defendants provided Mr. Lollis with all of the procedure he was due under the Fourteenth Amendment in connection with his demotion. Specifically, Chief Osmond met with Mr. Lollis on April 7, provided Mr. Lollis written and oral notification of the charges against him, presented Mr. Lollis with the evidence against him, and notified Mr. Lollis that the Police De-

partment was seeking a demotion in rank from the City Council. Chief Osmond presented Mr. Lollis with a Notice of Reprimand form, which cited the specific provisions of the City's administrative code and the Police Department personnel manual provisions that Chief Osmond determined Mr. Lollis had violated. Chief Osmond also presented him with copies of the statements from the Checotah police officers relating their interactions with Mr. Lollis. Finally, Chief Osmond explained the specific actions the Police Department was taking against him, including seeking the demotion from the City Council, and gave Mr. Lollis an opportunity to tell his "side" of the story.

Because the demotion could not be final until the City Council approved it, Mr. Lollis had a second predetermination opportunity to confront the evidence against him. On April 10, Mr. Lollis, accompanied by his union representative, addressed the City Council. Chief Osmond also appeared and presented the City Council with the evidence supporting the Police Department's disciplinary actions against Mr. Lollis. Thus, prior to his demotion, Mr. Lollis was twice provided the opportunity to tell his side of the story and to confront the evidence against him.

Mr. Lollis makes no claims with respect to the adequacy of his postdemotion proceedings. We note, however, that following the City Council's approval of the demotion, Mr. Lollis filed a grievance regarding the action, which was subsequently denied. The union chose not to appeal the grievance. Mr. Lollis was then afforded a second opportunity to address the City Council. We have previously held that the availability of city or union grievance procedures constitute constitutionally sufficient posttermination procedure. *See Montgomery*, 365 F.3d at 938; *Hennigh v. City of Shawnee*, 155 F.3d

1249, 1256 (10th Cir.1998). Here, not only did Mr. Lollis utilize the grievance procedures, he was also able to address the City Council a second time. Because Mr. Lollis received a meaningful opportunity to present his case prior to his demotion, he needed only "some opportunity" to address his demotion following the City Council's determination, *see Loudermill*, 470 U.S. at 543 n. 8, 105 S.Ct. 1487. He was twice afforded that opportunity, and this is sufficient to meet due process requirements.

Mr. Lollis nevertheless suggests that summary judgment on his due process claim is inappropriate because there are disputed questions of material fact with respect to whether or not he was in fact intoxicated when the Checotah officers pulled him over. He points out that the Checotah officers' statements did not specifically state that Mr. Lollis had "blood-shot eyes, slurred speech and a strong odor of alcohol" (instead, these statements appear in the officers' depositions). He notes that the written statements indicate only that Officer Whisenhunt believed Mr. Lollis was intoxicated, and the officers did not perform any tests to determine whether Mr. Lollis was in fact intoxicated. Mr. Lollis also points out that he never admitted he was intoxicated (he stated to Chief Osmond only that he "screwed up"). Essentially, he suggests that the basis for his demotion is questionable, if not unfounded. This argument is inapposite. The relevant inquiry is not whether the Defendants were substantively justified in demoting Mr. Lollis, but whether they provided him the constitutionally requisite process in so doing. As explained, Mr. Lollis received sufficient process. Because the record shows that the City afforded Mr. Lollis pre- and postdemotion process sufficient to meet the constitutional requirements, the District Court properly granted summary judgment on this claim.

### 2. Deprivation of a Liberty Interest in Reputation Without Due Process

Mr. Lollis next alleges that the Defendants caused false statements to be made, which statements deprived him of his liberty interest in his good name and reputation in violation of the Fourteenth Amendment. An individual has a liberty interest in his " 'good name and reputation as it affects [his] property interest in continued employment.' " *See Stidham v. Peace Officer Standards & Training,* 265 F.3d 1144, 1153 (10th Cir.2001) (quoting *Workman v. Jordan,* 32 F.3d 475, 480 (10th Cir.1994)). To state a claim for deprivation of a liberty interest, the statements must: (1) impugn the good name, reputation, honor, or integrity of the employee, (2) be false, (3) occur in the course of terminating the employee or foreclose other employment opportunities, and (4) be published. *Sandoval v. City of Boulder,* 388 F.3d 1312, 1329 (10th Cir.2004). "These elements are not disjunctive; all must be satisfied to demonstrate deprivation of the liberty interest." *Id.*

Mr. Lollis fails to indicate what statements were published and how they were false, and he fails to point to evidence in the record that creates a genuine issue of material fact on these questions. Although his brief is not entirely clear on this point, we surmise from Mr. Lollis's submissions to the District Court that he intends to argue that the Defendants caused the Checotah officers to write their statements regarding the April 4 incident, and that the Defendants issued a reprimand based upon those statements; because those statements, which formed the basis for the reprimand, are false, they infringed upon Mr. Lollis's liberty interest in his good name and reputation. Mr. Lollis's claim fails because there is no genuine issue of material fact as to whether these statements were false and whether these statements were false and whether they were published. There is no evidence in the record to indicate that the contents of the officers' incident reports—that the Checotah officers pulled Mr. Lollis over, believed him to be intoxicated, found an open container in his car, and escorted him home—were false. Mr. Lollis argues that the reports are false because there is no evidence that he was in fact intoxicated. But that fact is immaterial to whether the officers' statements that they believed him to be intoxicated were true. Mr. Lollis does not point to any false statements in Chief Osmond's written reprimand. Thus, there is no disputed issue as to whether any of the statements are false.

Moreover, Mr. Lollis does not specifically allege how or to whom the statements were published. There is no evidence that the Defendants caused the information contained in the Checotah officers' statements or the reprimand to be published outside the Police Department or City Council, as is required to establish his claim. *See Asbill v. Hous. Auth. of Choctaw Nation of Okla.,* 726 F.2d 1499, 1503 (10th Cir.1984) ("[I]ntragovernment dissemination, by itself, falls short of the Supreme Court's notion of publication: 'to be made public.' "). Further, a plaintiff may not create a genuine issue of material fact through unsubstantiated allegations. *Self v. Crum,* 439 F.3d 1227, 1230 (10th Cir. 2006) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings." (quotation omitted)).

### 3. Equal Protection

Mr. Lollis alleges the Defendants violated his right to equal protection of the laws under the Fourteenth Amendment by discriminating against him on the basis of his race. Specifically, he alleges he has been subjected to treatment harsher than that of similarly situated non-African-American officers. "The equal protection

clause is triggered when the government treats someone differently than another who is similarly situated." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.,* 933 F.2d 853, 859 (10th Cir. 1991) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). Thus, to succeed on an equal protection claim, Mr. Lollis must show that he was treated differently than other similarly situated officers. Because there is no evidence in the record of other similarly situated officers, he has failed to raise a disputed issue of material fact on his equal protection claim.

Individuals are considered "similarly situated" when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of "comparable seriousness." *McGowan v. City of Eufala,* 472 F.3d 736, 745 (10th Cir.2006) (analyzing whether employee was "similarly situated" in Title VII race discrimination case); *see also Salguero v. City of Clovis,* 366 F.3d 1168, 1176 (10th Cir.2004) (applying this "similarly situated" test to §§ 1981 and 1983 claims); *Drake v. City of Fort Collins,* 927 F.2d 1156, 1162 (10th Cir.1991) ("[T]he elements of a plaintiff's case are the same ... whether that case is brought under §§ 1981 or 1983 or Title VII."). Mr. Lollis provides no record citations and fails to state specific facts indicating that he was disparately disciplined as compared to other officers.[1] He states only that "other officers have had drinks and driven cars" but were not disciplined, and that Lieutenant Hammett received speeding citations but was not demoted. First, Mr. Lollis's

claims with respect to these "other officers" are without merit because there is no evidence that they were pulled over while driving after drinking or that an apprehending officer believed them to be intoxicated. Indeed, Mr. Lollis stated in his deposition testimony that, to his knowledge, no other officer had been reported to have been driving after drinking. Likewise, Mr. Lollis's argument that Lieutenant Hammett is similarly situated because he received speeding tickets ignores the fact that Lieutenant Hammett's supervisors were never aware of the infractions and therefore never had the opportunity to discipline him. Moreover, there is no evidence as to when Lieutenant Hammett received these speeding tickets; hence, there is no evidence that he was a Eufaula police officer at the time, that he worked under the same supervisor, and that he was subject to the same standards governing performance evaluation and discipline.

## B. Section 1981 Claim

Mr. Lollis also claims the Defendants violated 42 U.S.C. § 1981 by discriminating against him based on his race. Although § 1981 " 'on its face relates primarily to racial discrimination in the making and enforcement of contracts,' the statute provides a remedy against employment discrimination on the basis of race as well." *Ramirez v. Dep't of Corr.,* 222 F.3d 1238, 1244 (10th Cir.2000) (quoting *Johnson v. Ry. Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)). To establish a prima facie case of racial discrimination under § 1981, Mr. Lollis must demonstrate (1) he is a mem-

---

1. The only evidence in the record that Mr. Lollis cites regarding any individual's experiences is Mayor Bill Day's deposition testimony that in the past he has driven his personal car after consuming an alcoholic beverage. Yet there is no evidence that Mayor Day (who was previously a Eufaula police officer) was intoxicated when he did so, that a law enforcement officer pulled him over after drinking and driving, or even that he was a Eufaula police officer at the time he drove his car after drinking.

ber of a protected class, (2) he suffered an adverse employment action, and (3) similarly situated employees were treated differently. *Trujillo v. Univ. of Colo. Health Scis. Ctr.,* 157 F.3d 1211, 1215 (10th Cir. 1998). Mr. Lollis relies on the same facts to support both his § 1983 equal protection and his § 1981 claims. As discussed, there is no evidence in the record that similarly situated officers were treated differently than Mr. Lollis. Accordingly, for the same reasons provided above, Mr. Lollis's § 1981 claim fails.

## III. CONCLUSION

For the foregoing reasons we AFFIRM the District Court's grant of summary judgment.