**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 21 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

NICHOLAS G. MORGAN, III,

    Plaintiff - Appellant,

v.

O. LANE MCCOTTER, an individual;
FRANK MYLAR, an individual; GIL
GARCIA, an individual,

    Defendants - Appellees.

No. 03-4046

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:99-CV-73-TC)**

---

Roger D. Sandack, Salt Lake City, Utah, for Plaintiff - Appellant.

Nancy L. Kemp, Assistant Attorney General, (Bless Young, Assistant Attorney
General and Mark L. Shurtleff, Utah Attorney General, on the brief) for
Defendants - Appellees.

---

Before **TACHA**, Chief Judge, **BRORBY**, Senior Circuit Judge, and **KELLY**,
Circuit Judge.

---

**KELLY**, Circuit Judge.

---

    Plaintiff-Appellant Nicholas G. Morgan, III, appeals from the district

court's grant of summary judgment in favor of Defendants-Appellees O. Lane McCotter, the Executive Director of the Utah Department of Corrections ("UDOC"), Frank Mylar, UDOC's legal counsel, and Gil Garcia, an investigator for the Utah Department of Public Safety.[1]  Proceeding under 42 U.S.C. § 1983, Plaintiff claimed that he was deprived of a property interest in his continued employment with the State of Utah as a career service employee without due process of law when he was terminated "for cause" from an exempt position without adequate procedural protections.  He also claimed that he was deprived of a liberty interest.  The district court held that Plaintiff was provided adequate pre-termination due process protections, and that he failed to utilize post-termination proceedings available to him.  IV Aplt. App. 1010-19.  Rejecting the due process claims, the district court declined to address Plaintiff's remaining supplemental state-law claim.  Our jurisdiction arises under 28 U.S.C § 1291.  Because we find that the case presents no justiciable controversy, we remand to the district court to dismiss the action without prejudice.

## Background

After a career in law enforcement, Plaintiff became employed by the State

---

[1] In his brief, Plaintiff only refers to Defendant McCotter.  Consequently, any claims against the other Defendants are waived.  See Tran v. Trs. of the State Colls. in Colo., 355 F.3d 1263, 1266 (10th Cir. 2004).

of Utah in 1985. In 1993, he was appointed Deputy Director of the Utah Department of Corrections. Under Utah law, the position of Deputy Director is an "exempt" position, meaning that an individual occupying that position is essentially an at-will employee, and as such may be terminated without cause at any time. See Utah Code Ann. § 67-19-15(1)(d). This status stands in contrast to that of most other state employees who are classified as "career service employees." "Career service employees" are essentially tenured public employees who maintain a statutory property interest in their position and consequently may not be terminated without cause. See Utah Code Ann. § 67-19-18. If a career service employee is subject to termination "for cause," Utah law provides that prior to the termination becoming effective, the employee must be afforded a number of procedural protections including written notification of the reasons for termination, an opportunity to respond to the charges, and an opportunity to be heard by the department head. Id. Should a career service employee be dissatisfied with a department head's decision on the matter, he or she has a statutory right to appeal this decision to the Career Service Review Board (CSRB), an independent entity charged with reviewing the employment decisions of the various state departments. See Utah Code Ann. § 67-19a-202.

Prior to his appointment as Deputy Director, Plaintiff had achieved career service status through his service as a state employee. Consequently, if Plaintiff

were removed from his position as Deputy Director without cause, he would have had automatic priority for reassignment to a comparable career service position if one were available. According to Utah law, this priority would be effectuated through the placement of Plaintiff's name in a reappointment register designed specially for those career service members terminated "without cause" from an exempt position. See Utah Code Ann. § 67-19-17.

In late June 1996, Defendant McCotter met with Plaintiff and informed him that he had received reports that Plaintiff had engaged in conduct that violated departmental policies, and that such violations would have to be investigated. Aplt. Br. at 4. On July 3, 1996, Defendant McCotter placed Plaintiff on administrative leave with pay pending investigation of the charges. Id. Following an investigation, on September 6, 1996, Defendant McCotter met with Plaintiff and requested his resignation. Plaintiff refused to resign.

On September 16, 1996, Defendant McCotter sent Plaintiff a letter detailing the results of the investigation[2] and terminating Plaintiff "for cause" effective September 23, at 5:00 p.m. I Aplt. App. at 254. The letter concluded "[i]f you

---

[2]Among the allegations contained in Defendant McCotter's letter explaining his decision to terminate Plaintiff for cause were: fraudulent billing of the state for time Plaintiff had in fact been working for the military, maintaining an inappropriate relationship with a female subordinate, and various instances of disregarding department policies concerning competitive bidding, authorized purchases, personal use of state property, and favoritism. See I Aplt. App. at 255-58.

disagree with this action, you may appeal this decision directly to me within five (5) working days, where you will have a chance to respond to these allegations in a personal meeting." Id. at 258.

On September 23, Plaintiff's attorney faxed a letter to Defendant McCotter denying the truth of many of the allegations and "strongly urg[ing Defendant McCotter] to reconsider [the] decision to terminate Mr. Morgan after considering the whole story." Id. at 280. Defendant McCotter responded the same day with a letter confirming Plaintiff's termination and stating that "[e]ven though the pre-termination time has elapsed to present any further response, I will gladly review any post-termination written argument and evidence you may wish to submit on or before September 30, 1996." Id. at 282.

Plaintiff's attorney again responded to Defendant McCotter's letter, again requesting that Plaintiff's termination be rescinded and that Defendant "allow a reasonable period of time to review all the information provided . . . regarding [Plaintiff] and submit a response for your consideration." Id. at 284.

One more exchange of letters ensued in which Defendant McCotter refused to withdraw Plaintiff's termination and Plaintiff again requested recision of the termination and more time to provide evidence in response. See Aplee. Br. at 6. Following this exchange of letters, Plaintiff made no effort to appeal Defendant McCotter's decision to the CSRB, nor did he present any evidence that he in fact

desired reappointment to a career services position.

Plaintiff initiated this action on February 5, 1999. On appeal, what remains is his claim that Defendant violated his constitutional rights by depriving him of a property interest without affording him due process of law. See Snyder v. City of Moab, 354 F.3d 1179, 1189 (10th Cir. 2003). Plaintiff essentially concedes he has no property interest in the exempt position of Deputy Director, so his termination from that position cannot form the basis of a procedural due process claim. Rather, Plaintiff claims a property interest in his eligibility for reassignment to another career service position, and that his termination as Deputy Director resulted in the loss of that eligibility without due process of law. See Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972). As noted, on cross motions for summary judgment the district court granted Defendants' motion for summary judgment, finding that as a matter of law, Plaintiff was afforded adequate due process in connection with his termination. See IV Aplt. App. at 1010-19.

On appeal, Plaintiff advances three main arguments as to how Defendant McCotter's actions constituted a denial of his right to procedural due process. Plaintiff argues that (1) Departmental regulations require the provision of a full evidentiary hearing prior to the forfeiture of reassignment rights, see Aplt. Br. at 13-17; (2) even if no full evidentiary hearing was required at the pre-termination

stage, the limited procedures available to him at that stage did not comply with federal constitutional requirements, see id. at 17-22; and finally, (3) because he was not eligible to seek review of the termination decision with the CSRB he had no opportunity for a full evidentiary hearing as due process demands, see id. at 23-28.

## Discussion

We review a grant of summary judgment de novo, employing the same legal standard as the district court, specifically Fed. R. Civ. P. 56(c). Kingsford v. Salt Lake City Sch. Dist., 247 F.3d 1123, 1127-28 (10th Cir. 2001). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, we view the evidence in the light most favorable to the non-movant. Kingsford, 247 F.3d at 1128.

A. Justiciability Considerations

As an Article III court, our jurisdiction is limited by the Constitution to "cases and controversies." Allen v. Wright, 468 U.S. 737, 750 (1984). Both the Supreme Court and our court have expanded that constitutional limitation, recognizing that prudential considerations "founded in concern about the proper--

and properly limited--role of the courts in a democratic society" must also inform our determination of whether a justiciable dispute actually exists. Warth v. Seldin, 422 U.S. 490, 498 (1975). Because the question of justiciability implicates this court's jurisdiction, even if neither party, nor the district court, raised the issue, it is our duty to undertake an independent examination to determine whether the dispute, as framed by the parties, presents a justiciable controversy. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95 (1998); People for the Ethical Treatment of Animals v. Rasmussen, 298 F.3d 1198, 1202 (10th Cir. 2002). As is the case here, "[w]hen the case has been resolved in the district court on summary judgment grounds, a plaintiff must establish that there exists no genuine issue of material fact as to justiciability." Z.J. Gifts D-4, L.L.C. v. City of Littleton, 311 F.3d 1220, 1226 (10th Cir. 2002) (internal quotation marks omitted).

Though raised by neither of the parties, our primary concerns regarding justiciability focus on the twin questions of whether Plaintiff has standing to maintain this action and whether the case is ripe for judicial review. While the two concepts are analytically distinct, their substantial overlap in many cases gives rise to significant confusion. See Airline Prof'ls Ass'n v. Airborne, Inc., 332 F.3d 983, 988 (6th Cir. 2003). Our concern in this case is whether the Plaintiff has yet sustained any injury in fact by Defendant McCotter's actions;

thus, the issues of standing and ripeness are particularly difficult to divorce. See id.; McInnis-Misenor v. Me. Med. Ctr., 319 F.3d 63, 69 (1st Cir. 2003). Nonetheless, because the justiciability issues in this case implicate both doctrines, we attempt to analyze them individually.

B. Standing

Foremost among the well-established elements of a justiciable controversy is the requirement that the plaintiff have standing to maintain the suit. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); Z.J. Gifts D-4, 311 F.3d at 1226. "There are three requirements of Article III standing. First, the plaintiff must suffer an injury in fact. An injury in fact is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical." Essence, Inc. v. City of Fed. Heights, 285 F.3d 1272, 1280 (10th Cir. 2002) (internal quotation marks omitted). A plaintiff must also demonstrate that the harm complained of is fairly traceable to defendant's conduct and that a favorable ruling from the court would redress plaintiff's injury. Id. Thus, a main focus of the standing inquiry is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury. See also Rector v. City & County of Denver, 348 F.3d 935, 942-43 (10th Cir. 2003).

In the present case, Plaintiff frames his injury as the deprivation of his

property interest in eligibility for reappointment to a career service position. Specifically, Plaintiff contends that because he was terminated "for cause" from his position as Deputy Director, he automatically lost his eligibility for reappointment, and that this deprivation of his property interest without due process of law constitutes a judicially cognizable injury.

Although Plaintiff devotes the majority of his argument to the proposition that he was deprived of due process, comparatively little effort has been spent on establishing that Plaintiff has sustained any injury as a result of that deprivation. Under the facts of this case, such an injury is not self-evident. Moreover, our cases indicate that the harm Plaintiff asserts here fails to constitute the type of concrete and actual harm required to maintain standing.

In Loving v. Boren, 133 F.3d 771 (10th Cir. 1998), plaintiff, a university professor, claimed that a university policy restricting access to certain computer-based news services violated his First Amendment rights. Finding that plaintiff lacked standing to maintain the suit, this court made clear that plaintiff must show something more than simply a deprivation in the abstract. The court explained "[n]owhere did plaintiff adduce evidence that he suffered any injury in fact as a result of the University's new policy . . . . Plaintiff simply presented no evidence that he ever attempted to access news groups through the full service news server and was denied access. . . ." Id. at 773; see also Storino v. Borough of Point

<u>Pleasant Beach</u>, 322 F.3d 293, 297 (3d Cir. 2003) (holding that plaintiff's claimed possibility that local zoning ordinance may require application for a variance does not constitute injury in fact for standing purposes).

Plaintiff's claim, however, like that in <u>Loving</u>, is framed entirely in the abstract. Plaintiff has not represented to this court any intention, desire, or plan to continue his employment in a career service position with the State of Utah. Therefore, assuming without deciding that Plaintiff was deprived of due process, he nonetheless fails to demonstrate any injury in fact as a result of that deprivation.[3]

This reasoning may not be answered by the assertion that the deprivation of due process constitutes an injury independent of the surrounding circumstances. Instructive on this point is our recent holding in <u>Rector v. City & County of Denver</u>, 348 F.3d 935, 943-44 (10th Cir. 2003). There, plaintiffs brought a § 1983 action challenging the adequacy of the due process protections afforded to individuals who received parking tickets from the city. Finding one of the main plaintiffs lacked standing to maintain her claim, the court explained that because

---

[3]It must be remembered here that because Plaintiff possessed no protected property interest in his position as Deputy Director, the fact that his termination served to deprive him of that position does not constitute a deprivation of a property interest and thus does not entitle him to due process on that basis alone. See <u>Figuly v. City of Douglas,</u> 76 F.3d 1137, 1142 (10th Cir. 1996) (finding no right to due process in connection with termination when employee had no protected property interest in his job).

that plaintiff presented no basis for challenging the ticket on the merits, she sustained no injury in fact from a deprivation of due process. Id. at 945.

In an exceptionally lucid discussion of this issue, the court made clear that although the right to due process in connection with a deprivation of a property interest is absolute, "the Constitution does not protect procedure for procedure's sake." Id. at 943. The court explained that the determination whether the denial of due process constitutes an injury in fact "lies in the adoption of an ex ante perspective." Id. at 944. In other words, because the plaintiff in Rector proffered no defense on the merits, due process would not have affected the outcome, thus the plaintiff sustained no injury through the denial of due process. See Michael H. v. Gerald D., 491 U.S. 110, 127 n.5 (1989) (plurality opinion) (holding that right to a hearing must be premised upon a claim of substantive entitlement to the right sought to be vindicated).

By contrast, had the plaintiff in Rector offered to defend against the parking tickets on the merits, an ex post determination that such a defense would not have succeeded would not alleviate the injury plaintiff would have sustained by the city's failure to afford due process. See Carey v. Piphus, 435 U.S. 247, 266 (1978). In such a case, plaintiff would have sustained an injury in fact through her lack of opportunity to convince the city that her ticket was issued erroneously.

To employ a more concrete example, the test for whether a denial of due process constitutes an injury in fact is similar to that used to determine the sufficiency of a complaint in a civil action under Fed. R. Civ. P. 12(b)(6). See Fry Bros. Corp. v. Dep't of Hous. & Urban Dev., 614 F.2d 732, 733-34 (10th Cir. 1980). That is, one must ask whether, assuming the truth and validity of all of a plaintiff's factual allegations and legal theories, the due process protections would have alleviated any harm.

In this case the answer must be in the negative. The factual scenario here is even more illustrative of the proposition that due process is not purely an end in itself than under the facts of Rector. Although, unlike Rector, Plaintiff does contest the factual allegations supporting his loss of eligibility for reappointment, he does not claim that the loss of reappointment eligibility would cause him any harm. Because Plaintiff has made no allegation that he in fact desires reappointment to a career service position he has suffered no injury in fact from the loss of his eligibility for such a position. Even assuming the truth of all of his allegations, no amount of due process can remedy a harm that Plaintiff never claims to have sustained.

Not only has Plaintiff failed to demonstrate any injury in fact, but what is more, Defendant McCotter was legally powerless to effect any deprivation of Plaintiff's property interest. Although Defendant McCotter did have the authority

to terminate Plaintiff for cause, under the relevant statutory scheme that decision alone cannot deprive Plaintiff of his right to reassignment. Under Utah law, the Department of Human Resource Management ("DHRM") has plenary control over the placement of individuals on the reappointment register. See Utah Code Ann. § 67-19-8; Holland v. Career Servs. Review Bd., 856 P.2d 678, 681 (Utah Ct. App. 1993) ("certification of employees' eligibility for reappointment is within the sole province of DHRM."). Thus Plaintiff's claim that Defendant's decision to terminate him for cause rendered him ineligible for reassignment is not consistent with Utah law as we understand it. As demonstrated by the court's holding in Holland, Defendant McCotter had no legal authority to render Plaintiff ineligible for reassignment. That authority rests solely with the DHRM. Consequently, Defendant McCotter was legally powerless to compromise Plaintiff's property interest in reassignment.

This construction is entirely consistent with the text of Utah Code Ann. § 67-19-17, which states that "[a]ny career service employee accepting an appointment to an exempt position who is not retained by the appointing officer, unless discharged for cause . . . shall . . . be appointed . . . provided an opening exists; or . . . be appointed to a lesser position pending [an opening]." Although this section mandates that any such employee be reappointed, the converse is not true. The statute does not demand that any employee terminated for cause become

- 14 -

automatically ineligible for reappointment, but only refuses to mandate such reappointment. In accordance with the holding in <u>Holland</u>, the remaining discretion is vested in the DHRM.

C. <u>Ripeness</u>

In contrast to standing, "[r]ipeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." <u>Nat'l Park Hospitality Ass'n v. Dept. of Interior</u>, 538 U.S. 803, ___, 123 S. Ct. 2026, 2029 (2003) (internal quotation marks omitted); <u>see</u> <u>New Mexicans for Bill Richardson v. Gonzales</u>, 64 F.3d 1495, 1499 (10th Cir. 1995). Like standing, the ripeness inquiry asks whether the challenged harm has been sufficiently realized at the time of trial. The ripeness issue, however, focuses not on whether the plaintiff was in fact harmed, but rather "whether the harm asserted has matured sufficiently to warrant judicial intervention." <u>Warth v. Seldin</u>, 422 U.S. 490, 499 n.10 (1975).

Though rooted in the "cases and controversies" requirement of Article III, the ripeness doctrine also reflects important prudential limitations on a court's exercise of jurisdiction. <u>See</u> <u>Coalition for Sustainable Res., Inc. v. United States Forest Serv.</u>, 259 F.3d 1244, 1249 (10th Cir. 2001) ("Application of the ripeness doctrine . . . remains a confused mix of principle and pragmatic judgment reflecting its mixture of article III case and controversy requirements with

prudential restraints on the exercise of jurisdiction.") (internal quotation marks omitted). Consequently, should this court find this case to meet the constitutional standard for ripeness, prudential considerations may require us to stay our hand until the issues in this case have become more fully developed.

Determining whether the issues presented by this case are ripe for review "requir[es] us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977). Application of the fitness standard requires us to ask "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." New Mexicans for Bill Richardson, 64 F.3d at 1499 (internal quotation marks omitted). Likewise, the hardship inquiry may be answered by asking "whether the challenged action creates a direct and immediate dilemma for the parties." Id. (internal quotations marks omitted). Our answers to these tandem inquiries convince us that this case is not ripe for review.

Instructive on the ripeness issue is this court's decision in Keyes v. School District No. 1, Denver, Colorado, 119 F.3d 1437 (1997). In Keyes, appellants sought a declaration that the Busing Clause of the Colorado Constitution conflicted with the Equal Protection Clause of the Fourteenth Amendment and

was thus unconstitutional. Finding the issue not ripe, the court explained that "[a]ppellants . . . make no effort to establish that any particular school desires to implement voluntary integration plans, let alone that any school has been deterred by the Busing Clause from implementing such a plan. . . . This court may not speculate about future conflict between the Busing Clause and the . . . District's policies . . . ." Id. at 1444-45.

The holding in Keyes is quite applicable to the facts we confront today. Although the Busing Clause of the Colorado Constitution presented an apparent and theoretical obstacle to the enactment of integration measures by means of busing, the constitution had not presented any actual impediment to a proposed plan of integration through busing. Likewise, Plaintiff in the present case is ostensibly subject to rejection from further employment in a career service position because of his prior termination. Until Plaintiff expresses a desire for such a position, the controversy, like that in Keyes, remains purely theoretical.

Action by this court in the face of such an undeveloped controversy would be exactly the type of anticipation of contingent events that the prudential doctrine of ripeness was intended to forestall. At best, further developments would undoubtedly sharpen the factual issues in this case; at worst, the failure of certain contingent events may render a decision completely advisory. See Am. Sav. Bank, FSB v. UBS Fin. Servs., Inc., 347 F.3d 436, 439-40 (2d Cir. 2003).

Nor are we convinced that Plaintiff would suffer any undue hardship if we allow this case to develop more fully before ruling on the merits. See John Roe #2 v. Ogden, 253 F.3d 1225, 1231 (10th Cir. 2001). Plaintiff has expressed no desire to continue in a career service position since his termination. Thus, as discussed previously, he has suffered no concrete harm. As a matter of pure logic, postponing decision on this case until Plaintiff has suffered some concrete harm cannot itself constitute an independent harm to Plaintiff. See Pub. Water Supply Dist. No. 10 v. City of Peculiar, 345 F.3d 570, 573 (8th Cir. 2003) (finding that district would suffer no hardship from delay because it has no present injury).

Finally, we address Plaintiff's claimed deprivation of a liberty interest without due process of law. The analysis set forth above is equally applicable to this claim. Because Plaintiff fails to present this court with any concrete harm resulting from a deprivation of a liberty interest, no justiciable controversy exists.

REMANDED with instructions to dismiss the pending claims without prejudice. The motion to certify state question is DENIED. The motion to correct appellant's brief is GRANTED.