Kevin CALVEY, et al., Plaintiffs,

v.

Barack Hussein OBAMA, et al., Defendants.

Case No. CIV–10–353–R.

United States District Court, W.D. Oklahoma.

April 26, 2011.

Kevin J. Calvey, Kevin J. Calvey PC, Oklahoma City, OK, for Plaintiffs.

Michelle R. Bennett, U.S. Dept. of Justice, Washington, DC, for Defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court are Defendants' motion to dismiss Plaintiffs' Amended Complaint [Doc. No 12]; Plaintiffs' motion to amend complaint [Doc. No. 19] and Plaintiffs' proposed Second Amended Complaint [Doc. No. 19–1]; Plaintiffs' Response to Defendants' motion to dismiss [Doc. No. 16]; and Defendants' reply in support of their motion to dismiss [Doc. No. 21].

In their reply brief, Defendants state that they have no objection to Plaintiffs' proposed amendment of their Amended Complaint. *See* Reply [Doc. No. 21] at p. 1. Moreover, Defendants address the allegation and claims in Plaintiffs' Proposed Second Amended Complaint in their reply brief. Accordingly, Plaintiffs' amended motion to amend is GRANTED and the proposed Second Amended Complaint attached thereto [Doc. No. 171] shall be deemed filed *instanter*, and Defendants' motion to dismiss as augmented by Defendants' reply shall be treated as directed to Plaintiffs' Second Amended Complaint.

In support of their motion to dismiss, for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), F.R.Civ.P., Defendants assert that Plaintiffs lack standing as to all of their claims and that their claims are not ripe. Encompassed within Defendants' arguments, they assert that Plaintiffs have failed to allege sufficient facts to establish standing and that their claims are ripe.

In their Second Amended Complaint, Plaintiffs allege that the Patient Protection and Affordable Care Act, Pub. L. No. 111–148, 124 Stat. 119 (March 23, 2010), as amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111–152, 124 Stat. 1029 (Mar. 30, 2010), hereinafter referred to as the "ACA" or simply the "Act," and apparently in particular the minimum coverage provision of the Act, Section 1501 of the ACA, is unconstitutional because 1) Congress lacks authority under the Commerce Clause to force private citizens, including Plaintiffs, to purchase health care coverage and the Act therefore violates the Commerce Clause (First Claim); Congress lacks authority under Article I, § 2, 8 & 9 of the Constitution, and by implication the Sixteenth Amendment, to impose a capitation tax to enforce a mandate that private citizens, including Plaintiffs, purchase health care coverage under the Act (Second Claim); the power to enact legislation such as the Act is specifically reserved to the states pursuant to the Tenth Amendment (Third Claim); by forcing Plaintiffs to contribute to the funding of abortion, the Act violates Plaintiffs' "fundamental rights of conscience and the free exercise of religion protected by the First Amendment" (Fourth Claim); the Act deprives Plaintiffs of equal protection of the laws, guaranteed by the Fifth and Fourteenth Amendment "[b]y providing for some religious exemptions from the mandates of the Act, but forcing Plaintiffs to contribute to the funding of abortion in violation of their ... religious convictions" and "[b]y funding and benefitting certain special interest organizations, including unions, through tax

exemptions and other mechanisms," based on their political viewpoints, and "[b]y providing for 'earmarks,' or special interest expenditures," while denying similar funding and benefits to other individuals who don't share similar viewpoints or favor with Congress or Defendants (Fifth Claim); the Act violates the due process requirements of the Fifth Amendment by mandating that all private citizens, including Plaintiffs, purchase health care coverage under penalty of law (Sixth Claim); and it requires citizens to provide private medical information to the federal government and/or its designated agents or authorized health care providers in violation of the Fourth Amendment (Seventh Claim). Plaintiffs seek a declaratory judgment that the Act violates the Constitution as set forth in Plaintiffs' claims and a preliminary and permanent injunction enjoining the Act's enforcement.

■ For a federal court to have jurisdiction over an action, the party bringing suit must establish standing. *The Wilderness Society v. Kane County, Utah*, 632 F.3d 1162, 1168 (10th Cir.2011)(citing cases). The "irreducible constitutional minimum" requirements for standing are three. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351, 364 (1992); *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir.2006). First, the plaintiff must have suffered an injury in fact which is an invasion of a legally protected interest, which is concrete and particularized and actual or imminent, rather than conjectural or hypothetical. *Id.* Secondly, there must be a causal connection between the plaintiff's injury and the conduct of which the plaintiff complains such that the injury is "fairly traceable" to the challenged action of the defendant and not the result of an independent action of some third party not before the Court. *Id.* Thirdly, it must be "likely" rather than

merely "speculative" that the injury will be redressed by a favorable decision of the Court. *Id.* The Plaintiffs have the burden of establishing all three elements of standing. *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136, 119 L.Ed.2d at 364; *Opala*, 454 F.3d at 1157. Moreover, Plaintiffs must demonstrate standing for each claim they assert and for each form of relief they seek. *Davis v. Federal Election Commission*, 554 U.S. 724, 734, 128 S.Ct. 2759, 171 L.Ed.2d 737, 748 (2008); *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007)("Each plaintiff must have standing to seek each form of relief in each claim.").

Three of the Plaintiffs herein allege that they "currently do not have health insurance and have no desire or plans to purchase health insurance;" and that the Act requires them "now to investigate how the Act will impact them, investigate alternatives to their current provision for health care, and alter their finances and save money in preparation for the imminent requirement in the Act that ... [they] purchase health insurance." Second Amended Complaint at ¶ 9. All Plaintiffs "even those currently with health insurance" allege that they must now investigate how the Act will impact them, investigate alternatives to their current provision for health care, and alter their finances and save money in preparation for the imminent requirement in the Act that such Plaintiffs purchase health insurance." *Id.* at ¶ 10. In summary, all Plaintiffs allege that they must currently take investigatory steps and make financial arrangements now to ensure compliance with the Act.

Defendants argue that the three Plaintiffs who do not currently have health insurance and object to being required to purchase it have not alleged sufficient facts to establish standing with regard to their First, Second, Third and Sixth Claims. This is so, they assert, because

those Plaintiffs have failed to allege facts showing that they are very likely to be subject to the minimum coverage provision in 2014 and because they have not alleged that they are foregoing purchases now to save money to buy insurance in the future, as was true in the cases on which Plaintiffs rely to assert that they have standing. With respect to the Plaintiffs who currently have health insurance, Defendants argue that they have not established an injury in fact with respect to their First, Second, Third and Sixth Claims for Relief. Defendants assert that those Plaintiffs' contention *in the brief* in opposition to Defendants' motion that their need to take investigatory steps and make financial arrangements now for other means of health insurance or payment of health costs due to the "fact" that the cost of Plaintiffs' health insurance will increase does not demonstrate injury in fact because the predicate "fact" is merely a unilateral prediction and speculation about possible future events, citing *Whitmore v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135, 147 (1990); *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 233–35, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Covenant Media of S.C., L.L.C. v. City of North Charleston,* 493 F.3d 421, 429–30 (4th Cir.2007). Defendants further argue that these Plaintiffs' alleged injury, even assuming that it will occur in the future, is not fairly traceable to the ACA because the Act doesn't require insurance companies to raise their rates and there is no guarantee or even a likelihood that any insurance companies that do raise rates in the future will lower them if Plaintiffs prevail. Defendants argue that in any event, Plaintiffs' claims of injury depend on the choices of third parties not before the court whose actions the Court cannot presume either to control or predict, citing *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136, 119 L.Ed.2d at 364 and *Simon v. Eastern*

*Kentucky Welfare Rights Organization,* 426 U.S. 26, 42–43 & 45–46, 96 S.Ct. 1917, 48 L.Ed.2d 450, 462–63 & 464–65 (1976).

Defendants assert that Plaintiffs have also failed to allege a sufficient injury to confer standing to make their fifth claim, that for an equal protection violation, because Plaintiffs have failed to cite an ACA provision that could be considered an "earmark," "special interest expenditure" or a tax exemption favoring unions and for that matter do not allege any facts showing that Plaintiffs don't benefit from the alleged "earmarks," expenditures or exemption or point to other individuals who *do* benefit from those alleged "provisions" so as to demonstrate injury resulting from differential treatment. Defendants conclude that "Plaintiffs' vague and conclusory allegation that unidentified provisions of the Act treat them differently, in unspecified ways, than other unidentified individuals or organizations is simply not sufficient to satisfy Plaintiffs' burden to establish standing." Defendants' Reply at p. 8, citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); and *Morgan v. McCotter,* 365 F.3d 882, 888 (10th Cir.2004).

Plaintiffs have failed to allege sufficient facts to establish standing for their seventh claim, for a Fourth Amendment violation, Defendants assert, because Plaintiffs do not point to any provision of the ACA that requires taxpayers to report whether they have health insurance and if so, what kind. Defendants do not address Plaintiffs' allegation that Plaintiffs will be required "to provide private medical information to the federal government and/or its designated agents or authorized health care providers." Second Amended Complaint at ¶ 60.

Finally, in a, Defendants assert that Plaintiffs' Fourth Claim for relief predicated on the Free Exercise Clause, should be dismissed for lack of standing, because Defendants have shown in their opening brief that the ACA does not require the purchase of insurance that covers abortion services and Plaintiffs in their response did not dispute this. Reply Brief at p. 9 n. 7.

As noted above, Defendants also assert that Plaintiffs' claims are not ripe. They argue that Plaintiffs allege no injury, and that any injury that might be implied from the Amended Complaint could not occur before 2014, if even then. Not only is Plaintiffs' injury not inevitable, Defendants assert, but Plaintiffs have not shown that the ACA has any direct day-to-day effect on them. Defendants' Motion to Dismiss (filed prior to Plaintiffs' motion to amend their Amended Complaint) at p. 14.

## I. Standing for Plaintiffs' First, Second, Third and Sixth Claims for Relief

### A. The Three Uninsured Plaintiffs

■ The Court has carefully considered the parties' arguments and authorities and other authorities not cited by the parties. The Court concludes that these Plaintiffs have alleged sufficient facts to establish standing to challenge the minimum coverage provision of the ACA under the Commerce Clause, as an unconstitutional tax under Article I §§ 2, 8 & 9 of the Constitution and the Sixteenth Amendment, as a violation of the Tenth Amendment and as a violation of the Due Process Clause of the Fifth Amendment, *i.e.*, Plaintiffs' First, Second, Third and Sixth Claims for Relief. The three uninsured Plaintiffs in effect allege two injuries fairly traceable the challenged action of the Defendants 1) the future injury of being compelled to purchase health care coverage which they have no desire to purchase, *see* Second Amended Complaint at ¶¶ 8, 9 & 18; and 2) a present injury of having to now investigate how the Act will impact them and alternatives to their current provision for health care and of altering their finances and saving money for the imminent requirement in the Act that they purchase health insurance, *see* Second Amended Complaint at ¶ 9.

■ Plaintiffs' alleged future injury is concrete and particularized. That the purchase of health insurance by Plaintiffs who do not wish (or otherwise plan, *see id.* at ¶ 9) to purchase it is a concrete injury is not disputed by Defendants. The threatened injury is not speculative or conjectural merely because Plaintiffs have not alleged that they are unlikely to be eligible for Medicaid or Medicare, that they are unlikely to qualify for any of the Act's exemptions from the minimum coverage provision in 2014 or even that they are likely to be subject to the minimum coverage provision when it goes into effect in 2014. It may reasonably be inferred from Plaintiffs' allegations that they must take steps now in preparation for the imminent requirement of the Act that they purchase health insurance, *id.* at ¶ 10, that it is likely that Plaintiffs will be subject to the minimum coverage. As to Defendants' argument that Plaintiffs' failure to allege facts showing that it is unlikely that events will occur which will render Plaintiffs not subject to the Act's requirement that they purchase health insurance makes Plaintiffs' injury speculative, Defendants are asking Plaintiffs to engage in speculation. Circumstances are virtually always subject to change. The Court is of the opinion that Plaintiffs' burden of pleading facts sufficient to establish a plausible future injury does not include eliminating all or even most contingencies that could obviate the future injury. *See Lujan,* 504 U.S. at 561, 112 S.Ct. at 2136, 119 L.Ed.2d at 364

("At the pleading state, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'") (citation omitted); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868, 884 (2009)(a plaintiff's pleading burden is to allege sufficient facts to show more than mere possibility of entitlement to relief but less than the probability of entitlement to relief; the burden is one of showing the plausibility of entitlement to relief)(citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 557 & 570, 127 S.Ct. 1955, 167 L.Ed.2d 929, 940, 941 & 949 (2007)). In this regard, the Court agrees with the courts in *Florida ex rel. McCollum v. United States Department of Health and Human Services,* 716 F.Supp.2d 1120, 1148 (N.D.Fla.2010) and in *Mead v. Holder,* 766 F.Supp.2d 16, 23–25 (D.D.C.2011)). In the *McCollum* case, the United States District Court for the Northern District of Florida, in response to the defendants' assertions that the plaintiffs might in the future need or want health insurance, that businesses and incomes fail and disabilities occur, stated in pertinent part as follows:

> That is possible, of course. It is also "possible" that by 2014 either or both the plaintiffs will no longer be alive, or may at that time fall within one of the "exempt" categories. Such "vagaries" of life are always present, in almost every case that involves a pre-enforcement challenge. If the defendants' position were correct, then courts would essentially *never* be able to engage in pre-enforcement review. Indeed, it is easy to conjure up hypothetical events that could occur to moot a case or deprive any plaintiff of standing in the future. .... In short, to challenge the individual mandate, the individual plaintiffs need

not show that their anticipated injury is absolutely certain to occur despite the "vagaries" of life; they need merely establish "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," see *Babbitt, supra,* 442 U.S. at 298, 99 S.Ct. 2301, that is reasonably "pegged to a sufficiently fixed period of time," see *ACLU, supra* 557 F.3d at 1194, and which is not "merely hypothetical or conjectural," see *NAACP, supra* 522 F.3d at 1161.

716 F.Supp.2d at 1148. Allegations of a *possible* future injury do not suffice to establish the injury in-fact requirement of standing. *Whitmore v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135, 147 (1990); *Nova Health Systems v. Gandy,* 416 F.3d 1149, 1155 (10th Cir. 2005). Rather, "[a] threatened injury must be 'certainly impending' to constitute injury in fact." *Id., quoting Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *Nova Health Systems v. Gandy,* 416 F.3d at 1155. The threatened injury to the three Plaintiffs herein who do not now have health insurance and do not wish to purchase it—the requirement that they purchase such insurance or be subject to penalties—is certainly impending and will not occur at an indefinite time. Rather, Plaintiffs' injury will occur in 2014, when the ACA with its incorporated minimum coverage provision takes effect. In summary, these three Plaintiffs have shown "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), and that the injury is imminent, not conjectural or hypothetical. It is apparent from Plaintiffs' allegations that there is a causal connection between their alleged injury and the challenged

action of the Defendants such that their injury is fairly traceable to the Defendants and not the result of some third party's independent action and that it is likely, not merely speculative, that the declaratory and/or injunctive relief Plaintiffs seek will redress their injury. Defendants do not contend otherwise. Accordingly, the three uninsured Plaintiffs have standing by virtue of the alleged threatened future injury to assert their First, Second, Third and Sixth Claims for Relief.

The three Plaintiffs who do not currently have health insurance have also alleged sufficient facts to establish standing to assert their First, Second, Third and Sixth Claims for Relief by virtue of their alleged present injury. Although those Plaintiffs' factual allegations as to the current injury or injuries are not as specific as those in, for example, *Mead v. Holder*, 766 F.Supp.2d at 25–26, 2011 WL 611139 at *8, Plaintiffs' allegations nonetheless are sufficient to show the existence of an actual present injury which is sufficiently concrete and particularized to constitute an injury in fact. *Compare with Mead, supra, and with Florida v. United States Department of Health and Human Services, 780 F.Supp.2d 1256, 1270–71 & 1271–72, 2011 WL 285683 at *7 & 8 (affidavits on summary judgment directed to standing issue).* Again, Defendants do not argue that there is no causal connection between Plaintiffs' alleged present injury, which is alleged to be ongoing, and the conduct of the Defendants, or that it is likely that those Plaintiffs' alleged current and ongoing injury will not be redressed by a favorable decision of the Court granting the requested declaratory and/or injunctive relief and the Court finds that those aspects of standing are apparent from Plaintiffs' Second Amended Complaint.

**B. Remaining Insured Plaintiffs**

█ The remaining Plaintiffs, it may reasonably be inferred from Plaintiffs' Second Amended Complaint, all currently have health insurance. Yet they allege that "they must now investigate how the Act will impact them, investigate current provision for health care, and alter their finances and save money in preparation for the imminent requirement in the Act" that they purchase health insurance. Second Amended Complaint at ¶ 10. These Plaintiffs have failed to allege an injury that is fairly traceable to the challenged action of the Defendants and not the result of some independent action of some third party not before the Court or of Plaintiffs' own actions, *i.e.*, a self-directed, unnecessary "injury" not caused by enactment of the ACA. Even if the Court were to consider Plaintiffs' argument in their brief—that Plaintiffs are having to take the alleged actions, as quoted above, because the ACA will cause the cost of health care insurance to rise due to the prohibition on denying coverage because of pre-existing medical conditions—as amending Plaintiffs' allegations, the result is the same. First, that insurance costs will increase as a result of the ACA is mere speculation and speculation about future events does not constitute an injury in fact. *Whitmore v. Arkansas*, 495 U.S. at 158, 110 S.Ct. at 1724, 109 L.Ed.2d at 147. Nor, in the Court's view, can Plaintiffs establish an injury in fact by alleging a current injury based upon a future event which is merely speculative or possible. Moreover, Plaintiffs are not challenging the legality of the ban on denying coverage based on pre-exiting medical conditions, and Plaintiffs' injuries must flow from the provision of the ACA they seek to challenge. *See Lewis v. Casey*, 518 U.S. 343, 358 n. 6, 116 S.Ct. 2174, 135 L.Ed.2d 606, 622 n. 6 (1996). *See also Davis v. Federal Election Commission*, 554 U.S. 724, 128 S.Ct. 2759, 171 L.Ed.2d 737, 748 (2008). Even if the insured Plain-

tiffs are suggesting that they will suffer some future injury if insurance companies were to raise their premiums in response to the ACA, the ACA does not require insurance companies to raise their premiums, and if insurance companies did so, any injury to Plaintiffs would be the result of the insurance companies' independent actions and not the challenged actions of the Defendants. *See San Diego County Gun Rights Committee v. Reno,* 926 F.Supp. 1415, 1423 (S.D.Cal.1995), *aff'd,* 98 F.3d 1121 (9th Cir.1996). In other words Plaintiffs' future injury would not be fairly traceable to the ACA or the Defendants. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130, 119 L.Ed.2d at 364.

## II. Standing for Plaintiffs' Fifth Claim for Relief (Equal Protection)

■ Plaintiffs have failed to identify any specific provision(s) of the ACA that provide "earmarks" or "special interest expenditures" for some groups, including unions, and not Plaintiffs, *see* Second Amended Complaint at ¶¶ 33 & 52; have failed to identify any specific provision(s) of the ACA that exempt some citizens from penalties or "taxes" while imposing same on others, including the Plaintiffs, based on whether they choose to purchase health insurance, *id.* at ¶ 50; *see id.* at ¶ 29; and have failed to identify any specific provisions of the ACA that fund and benefit special interest organizations, including unions, "through tax exemptions and other mechanisms provided for in the Act based on their political views" while "denying similar funding to other individuals and organizations that do not share similar viewpoints," including Plaintiffs, *see id.* at ¶ 51, ¶¶ 29 & 30. Indeed, Plaintiffs do not even allege that such unidentified provisions will not benefit Plaintiffs. Defendants do allege that they are not of the same political view as Defendants; that

through enforcement of the Act, certain organizations, specifically unions, will not be "taxed" on their health care plans because they share Defendants' political views; and that Plaintiffs will be "taxed for health care coverage provided by the Act," and thus that Plaintiffs "will be discriminated against in the enforcement of the Act." Second Amended Complaint at ¶ 29.

Plaintiffs' failure to identify specific provisions in the ACA which provide the alleged "earmarks," "special interest expenditures" and tax exemptions which Plaintiffs maintain favor some unidentified organizations, including unions and, inferentially, do not benefit Plaintiffs, is fatal to standing to assert an equal protection claim. The Court agrees with the Defendants that "[i]t is impossible to sufficiently allege any injury when a plaintiff cannot even identify the provision of a statute that purportedly injured him." Reply Brief at p. 8. And with respect to Plaintiffs' "claim" for discriminatory *enforcement* of the ACA by Defendants, Second Amended Complaint at ¶ 29, Plaintiffs have failed to allege any facts showing that their conclusory allegation that Defendants will enforce the Act in a manner that is discriminatory is anything other than rank speculation. Hence, any injury to Plaintiffs from discriminatory enforcement is only a "possible future injury," *Whitmore v. Arkansas,* 495 U.S. at 158, 110 S.Ct. 1717, 109 L.Ed.2d at 147, or one which is "hypothetical," *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136, 119 L.Ed.2d at 364, which is insufficient for Article III standing. *Id.*

## III. Standing for Plaintiffs' Seventh Claim for Relief (Fourth Amendment—Privacy)

■ Plaintiffs' sole allegations to support their Fourth Amendment claim are

that "[t]he Act requires citizens to provide private medical information to the federal government and/or its designated agents or authorized health care providers, in violation of the Fourth Amendment," Second Amended Complaint at ¶ 60, and that as a result of Defendants' violation of the Fourth Amendment, "Plaintiffs have suffered immediate and irreparable harm." *Id.* Again Plaintiffs have failed to identify what provision of the Act requires the disclosure of "private medical information" to the federal government. Plaintiffs have also failed to allege what "private medical information" must be disclosed to the federal government or even that Plaintiffs will have to disclose it, though the latter may reasonably be inferred from Plaintiffs' allegation. Absent such allegations, Plaintiffs have failed to show any future or threatened invasion of their Fourth Amendment rights as a result of the ACA or Defendants' conduct which is concrete and particularized and not conjectural or hypothetical. Moreover, although Plaintiffs allege that the Act requires citizens to provide private medical information to the federal government's designated agents or authorized health care providers, *id.* ¶ 60, Plaintiffs have failed to identify any provision of the ACA which authorizes private health care providers to act for the federal government as its agents or otherwise, and absent such an allegation, any injury to Plaintiffs occasioned by having to provide private medical information to health care providers is not fairly traceable to the ACA or the actions of the Defendants and not the result of independent actions of third parties not before the Court, nor is it likely that the declaratory and/or injunctive relief sought would redress the alleged injury. *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130, 119 L.Ed.2d at 364.

Plaintiffs suggest in their brief in response to Defendants' motion to dismiss that the Act will require Plaintiffs to divulge to the federal government whether or not they have health insurance and what kind, in which information they contend they have a protected privacy right. Plaintiffs' Response to Defendants' Motion at p. 5. Even if the Court were to treat Plaintiffs Second Amended Complaint as amended by this "allegation," Plaintiffs have failed to identify any provision of the ACA which requires the disclosure of this information, so any injury to Plaintiffs' Fourth Amendment privacy rights, based upon Plaintiffs' pleadings, is conjectural or hypothetical and is not fairly traceable to the ACA or the Defendants' enforcement of it.

## IV. Standing for Plaintiffs' Fourth Claim for Relief (Free Exercise Clause)

 Plaintiffs allege that the ACA forces Plaintiffs to contribute to the funding of abortion, *see* Second Amended Complaint at ¶¶ 19–22 & 45, in violation of Plaintiffs' "fundamental rights of conscience and the free exercise of religion protected by the First Amendment to the Constitution," *id.* at ¶ 45, as a result of which "Plaintiffs have suffered immediately harm, including the loss of their constitutional rights." *Id.* Again, Plaintiffs have failed to identify a provision of the ACA that requires them to contribute to the funding of abortion, much less identified a provision of the ACA that requires them to purchase health insurance from an insurer that provides insurance coverage for abortions and/or that any part of the premiums the Plaintiffs will pay for health care insurance will necessarily be used, at least in part, to pay for abortions. Absent such allegations, Plaintiffs have failed to allege a future or threatened injury that is concrete and not conjectural or hypothetical or one which is fairly traceable to the ACA or the actions of the Defendants.

Moreover, as Defendants point out, the ACA requires that the Secretary of Health and Human Services "shall assure" that there is at least one qualified health care plan offered in an Exchange that does not provide coverage for abortions for which federal funding is *either* prohibited or allowed. See ACA § 1303(a)(1)(D)(i)(II) & (D)(ii)(I); *see also* ACA § 1334(a)(6) (there must be at least one multi-state plan offered in an Exchange that does not provide coverage for abortions for which federal funding is prohibited). Moreover, even if Plaintiffs decided to purchase insurance in an Exchange from a plan that covers abortion services for which federal funding is prohibited (non-excepted abortion services), payments by enrollees for coverage of non-excepted services must be separated from payments by enrollees for coverage of other services, and payments for the latter may not be used to pay for non-excepted abortion services. ACA § 1303(b)(2)(C)(ii)(II). Plaintiffs have not responded to this argument Defendants make in support of their motion to dismiss Plaintiffs' Fourth Claim, based upon the Free Exercise Clause, for lack of standing. Therefore, pursuant to LCvR 7.1(g), in the Court's discretion, Defendants' motion to dismiss this claim is deemed confessed and is granted. LCvR 7.1(g). *See United States v. Nacchio,* 555 F.3d 1234, 1251 (10th Cir.2009)("[A] respondent must address any and all issues raised by a moving party's papers, or else face the very real possibility that it will be deemed to have abandoned its right to do so.").

### V. Ripeness

 Ripeness is a justiciability doctrine designed *to prevent courts from entangling themselves in abstract disagreements by premature adjudication. See National Park Hospitality Association v. Department of Interior,* 538 U.S. 803, 807, 123 S.Ct. 2026, 2029, 155 L.Ed.2d 1017

(2003). The ripeness inquiry asks not whether the plaintiff has in fact been harmed, but "whether the harm asserted has matured sufficiently to warrant judicial intervention." *Morgan v. McCotter,* 365 F.3d 882, 890 (10th Cir.2004), *quoting Warth v.Seldin,* 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 45 L.Ed.2d 343, n. 10 (1975). To determine whether issues presented by a case are ripe for review, a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Whether a case is fit for judicial resolution depends on "whether the case involves uncertain or contingent future events that may not occur as anticipated or indeed may not occur at all." *Morgan v. McCotter,* 365 F.3d at 890, *quoting New Mexicans for Bill Richardson v. Gonzales,* 64 F.3d 1495, 1499 (10th Cir.1995)(internal quotation marks omitted). The hardship inquiry is answered by asking "whether the challenged action creates a direct and immediate dilemma for the parties." *Id.* at 891, *quoting New Mexicans,* 64 F.3d at 1499 (internal quotation marks omitted).

 The issues presented by the three uninsured Plaintiffs in their First, Second, Third and Sixth Claims for relief are ripe for adjudication. "Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Blanchette v. Connecticut General Insurance Corp.,* 419 U.S. 102, 143, 95 S.Ct. 335, 42 L.Ed.2d 320, 353 (1974). Moreover, the inevitable operation of the ACA is, according to the uninsured

Plaintiffs' allegations, having "a direct effect on [their] day-to-day business" now. *Abbott Laboratories*, 387 U.S. at 152, 87 S.Ct. at 1517, 18 L.Ed.2d at 693. Hence, both the fitness and hardship inquiries are answered in the affirmative for the uninsured Plaintiffs' First, Second, Third and Sixth Claims for Relief.

As should be evident from the Court's discussion concerning the remaining, currently insured Plaintiffs' standing to assert the same claims, those Plaintiffs' claims involve uncertain or contingent future events that may never occur and neither the ACA nor Defendants' enforcement of it creates any direct and immediate dilemma for those Plaintiffs. Thus, for the Plaintiffs who currently have health care insurance, both prongs of the ripeness inquiry are answered in the negative.

Having concluded that all Plaintiffs herein have failed to allege sufficient facts to demonstrate standing to assert their Fourth, Fifth and Seventh Claims for Relief, the Court finds it unnecessary to address whether such claims are ripe.

### Conclusion

In accordance with the foregoing, Plaintiffs' motion to amend their Amended Complaint [Doc. No. 19] is GRANTED and Plaintiffs' proposed Second Amended Complaint [Doc. No. 19–1] is deemed filed *instanter;* Defendants' motion to dismiss [Doc. No. 12], treated as directed to Plaintiffs' Second Amended Complaint, is GRANTED in part and DENIED in part, Defendants' motion to dismiss all Plaintiffs' Fourth, Fifth and Seventh Claims for Relief being GRANTED and those claims DISMISSED for lack of standing; Defendants' motion to dismiss all insured Plaintiffs' First, Second, Third and Sixth Claims for Relief being GRANTED and all of those Plaintiffs' First, Second, Third and Sixth Claims for Relief DISMISSED for lack of standing and ripeness; and Defendants' motion to dismiss the First, Second, Third and Sixth Claims for Relief of the three uninsured Plaintiffs, Plaintiffs Martye McCall, David Lowther and James Walters, being DENIED.